Filed 7/29/13  In re Marcus C. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| In re MARCUS C., a Person Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | D063568 |
| Plaintiff and Respondent, | (Super. Ct. No. EJ3618) |
| v. | |
| E.C., | |
| Defendant and Appellant. | |


APPEAL from findings and orders of the Superior Court of San Diego County,

Gary M. Bubis, Judge.  Affirmed.


Suzanne Davidson, under appointment by the Court of Appeal, for Defendant and

Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County

Counsel and Dana C. Shoffner, Deputy County Counsel, for Plaintiff and Respondent.

E.C. challenges findings and orders denying reunification services to her under Welfare and Institutions Code section 361.5, subdivision (b)(10).[1] She contends there is not substantial evidence to support the juvenile court's finding that reunification is not in her child's best interests. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

E.C. is the mother of four children. Her three oldest children are not in her care. This appeal concerns her youngest child, Marcus C., who is almost nine years old. Marcus's presumed father is Mark H. He has no other children.

E.C. has a significant substance abuse history. In a 2010 dependency case, she reported that she had used cocaine for the last 12 years, methamphetamine for 14 years and marijuana for 16 years. She supported herself through prostitution. In 2008 and 2010, E.C. was convicted on charges of felony narcotics possession. She was also convicted on charges of driving under the influence in 2010.

In December 2002, E.C. tested positive for drugs shortly before she gave birth to C.P., her third child. In May 2003, C.P. was placed in foster care after the social services agency received a referral alleging that E.C. was absent.[2] In 2004, E.C.'s two oldest children were adjudicated dependents of the juvenile court after E.C. left them with an elderly relative without any provision for support. E.C.'s reunification case plan required parenting classes, a substance abuse evaluation and recommended treatment, a

---

[1]    Unless otherwise specified, all statutory references are to the Welfare and Institutions Code.

[2]    The record does not reflect the final disposition in C.P.'s dependency case.

2

psychological evaluation and recommended treatment and random drug testing. E.C. did not successfully complete her services. In 2006, the court terminated reunification services and ordered a permanent plan of foster care for the two oldest children.

In 2010, Marcus, who was then five years old, was placed in protective custody after E.C. was arrested for probation violations. The probation department found several marijuana plants in her home. At the dispositional hearing, the juvenile court placed Marcus with his father, Mark, with family maintenance services. The court in that case did not order the Agency to provide reunification services to E.C., who remained incarcerated throughout Marcus's dependency proceedings. When the court dismissed jurisdiction, it granted sole physical custody of Marcus to Mark, and ordered E.C.'s visitation with Marcus to be supervised by a third party.

E.C. said she relapsed on cocaine in 2006 or 2007. She used cocaine every day until March or April of 2012, when she moved to Mark's home, at his invitation, to care for Marcus on the condition that she stop using cocaine.

Mark and E.C. had an incident of domestic violence in October 2012. Mark became angry because E.C. was "chugging" a bottle of his brandy. He grabbed her by the neck, choked her, and threw her against the wall. The court issued a protective order. When Mark was released from jail, he and E.C. decided to live together and work things out.

In November 2012, the San Diego County Health and Human Services Agency (Agency) detained Marcus in protective custody and filed a petition under section 300, subdivision (b) alleging Marcus was at substantial risk of harm due to a recent incident of

domestic violence. After arguing with E.C., Mark was arrested when he poured gasoline on himself, his home and a police officer. At intake, Mark's blood alcohol level was .204. Mark pleaded guilty to assault with a deadly weapon on a police officer. He was sentenced to 365 days in custody with permission to serve his sentence in a residential substance abuse treatment program, if available.

The social worker reported that Marcus was an intelligent, social and outgoing child. He said his mother smoked marijuana because she was addicted to drugs. His father grew marijuana in their home for sale. Marcus said he was "kinda" afraid when his parents got into a fight. He heard his father threaten to burn the house down. Marcus knew his father had been arrested for choking his mother. He said he was "just kinda scared" when he learned about the incident.

E.C. denied she was using drugs. She said she had reduced her alcohol use. Currently, she drank two 40-ounce beers a day and smoked "a blunt [of marijuana] a day." According to E.C., marijuana was not a drug. Approximately every four days, E.C. shared a gallon of vodka with friends. She liked to drink before Marcus returned home from school to calm her nerves.

The jurisdictional and dispositional hearing was held on January 22, 2013. The Agency recommended that the court offer or provide reunification services to Mark and deny reunification services to E.C. The court admitted the Agency's reports in evidence[3] and heard testimony from the social worker and E.C.

---

3    The court did not admit a report that was filed on the date of the hearing and included reports from the 2004 and 2010 dependency cases.

The social worker testified that E.C.'s substance abuse had resulted in the removal of Marcus's older siblings from E.C.'s custody. E.C. was denied reunification services in Marcus's 2010 dependency case. She had been asked to attend substance abuse treatment on at least four separate occasions specifically in: her dependency case for her two oldest daughters; her dependency case for her third child; her first dependency case for Marcus; and through probation for her drug-related criminal cases.

In this case, the social worker offered voluntary services to E.C. and referred E.C. to KIVA for inpatient substance abuse treatment. E.C. met with the substance abuse specialist, who referred her to inpatient residential treatment. E.C. scheduled an intake with KIVA but did not keep the appointment. She was then referred to the Family Recovery Center. The social worker scheduled three intake appointments on E.C.'s behalf. E.C. did not attend any of them. E.C. did not return the social worker's telephone calls. The social worker telephoned E.C. using another person's telephone. The social worker tried to arrange a meeting with E.C. to arrange visitation and services. E.C. became enraged and abruptly terminated the telephone call.

E.C. visited Marcus once in the two months he was in foster care. The foster mother reported that E.C. telephoned Marcus on occasion. During many calls, E.C. sounded intoxicated. In those calls, she slurred her words and had problems putting sentences together.

E.C. testified that she was incarcerated during Marcus's 2010 dependency proceedings. While in custody, she participated in Narcotics/Alcoholics Anonymous, GED and other classes. During the 2004 dependency proceedings, she participated in a

year-long residential substance abuse treatment program. Marcus was in her care at the program. When E.C. relapsed, she put herself back in the treatment program, but did not complete it. E.C. did not enter the KIVA program because she was offended by a comment a person made to her at the intake appointment. She tried to attend intake for another program but missed the appointment because she was late. E.C. said she still smoked marijuana every now and then, but she did not drink or use crack cocaine, which was her "drug of choice."

E.C. testified that it took an hour to travel to see her son if she had a ride. It took even longer with public transportation. Visits were scheduled starting at 4:30 p.m., which was the time the return bus left. There was only one bus a day.

The juvenile court sustained the section 300 petition and removed Marcus from the custody of his parents. The court ordered a plan of family reunification services for Mark. The court stated that the overriding issue for E.C. for the past eight years was her substance abuse. The State of California, through dependency proceedings and the criminal justice system, had made numerous attempts to provide substance abuse treatment services to her. E.C. was not going to stop using drugs until she wanted to stop using drugs. E.C. did not need court-ordered reunification services to stop using drugs. The court said, "She can get herself clean and maybe if she does it on her own, she will be able to do it where it's going to work. The mom and dad appear that they are going to stay together one way or the other. I guess my biggest fear is dad will be successful, the case closes, and she moves back in, and these poor kids go through this again and again."

The juvenile court found that there was no clear and convincing evidence to show that reunification with E.C. was in Marcus's best interests and denied services to E.C. under section 361.5, subdivision (b)(10).

## DISCUSSION

E.C. contends the juvenile court erred when it bypassed family reunification services to her under section 361.5, subdivisions (b)(10). She argues the court abused its discretion when it determined it was not in Marcus's best interests to reunify with her.

### A

*Statement of Law and Standard of Review*

Family reunification services play a critical role in dependency proceedings. (*In re Alanna A.* (2005) 135 Cal.App.4th 555, 563.) To deny family reunification services to a mother or statutorily presumed father, the court must find by clear and convincing evidence that the parent is described by one or more of the provisions in section 361.5, subdivision (b). (§ 361.5, subd. (b)(1)-(15); see also 42 U.S.C. § 671(a)(15)(D).)

Under section 361.5, subdivision (b)(10), reunification services need not be provided to a parent when the court finds by clear and convincing evidence (1) that the court previously ordered termination of reunification services for the child's siblings or half siblings (sibling) because the parent failed to reunify with the sibling; and (2) that the parent has not subsequently made a reasonable effort to treat the problems that led to removal of the child's sibling from that parent. (*K.C. v. Superior Court* (2010) 182 Cal.App.4th 1388, 1393-1394.) However, even if the parent is described by section

7

361.5, subdivision (b), the juvenile court may order reunification services to a parent if it finds by clear and convincing evidence that reunification is in the child's best interest. (§ 361.5, subd. (c).)

"To determine whether reunification is in the child's best interest, the court considers the parent's current efforts, fitness, and history; the seriousness of the problem that led to the dependency; the strength of the parent-child and caretaker-child bonds; and the child's need for stability and continuity." (*In re Allison J.* (2010) 190 Cal.App.4th 1106, 1116.) A best interests finding requires a likelihood that reunification services will succeed. The court must have some reasonable basis to conclude that reunification is possible and will be safe for the child. (*Ibid.*)

We review an order denying reunification services under section 361.5, subdivision (b) for substantial evidence. (*Cheryl P. v. Superior Court* (2006) 139 Cal.App.4th 87, 96.) We resolve all conflicts in favor of the prevailing party. Issues of fact and credibility are questions for the trier of fact. The reviewing court may not reweigh the evidence when assessing the sufficiency of the evidence. (*In re Jasmine C.* (1999) 70 Cal.App.4th 71, 75.) The party challenging the ruling of the trial court has the burden to show the evidence is insufficient to support the ruling. (*In re Geoffrey G.* (1979) 98 Cal.App.3d 412, 420.)

*The Court Reasonably Determined E.C. Did Not Meet Her Burden to Show That Reunification with Her Was in Marcus's Best Interests*

E.C. implicitly concedes there is substantial evidence to support a finding under section 361.5, subdivision (b)(10). Her only contention on appeal is the juvenile court's finding that reunification with her is not in Marcus's best interests is not supported by substantial evidence. (§ 361.5, subd. (c).) E.C. argues the record shows that Marcus was very bonded to her and missed her, and she had been a good parent to him. She acknowledges she did not participate in the voluntary services that were offered to her when Marcus was detained, but asserts the record shows that she was willing to participate in court-ordered services. Finally, E.C. points out that the juvenile court was very concerned that she and Mark would reunite and Marcus would again be exposed to E.C.'s substance abuse. She argues the provision of reunification services would address the court's concerns, reduce the possibility that Marcus would be exposed to substance abuse and domestic violence, and encourage relapse prevention, stability and proper parenting.

We are not persuaded by E.C.'s argument. Under the substantial evidence standard of review, this court does not reweigh the facts. (*In re Jasmine C.*, *supra*, 70 Cal.App.4th at p. 75.) The juvenile court reasonably determined that reunification with E.C. was not in Marcus's best interests. E.C. had a serious and lengthy substance abuse problem. She was not amenable to treatment. Marcus was acutely aware of the incidents of domestic violence between his parents. He knew that his mother had a drinking

problem. Although the record shows that Marcus loved his mother, he told his foster mother, "I'm so happy I'm here, it's quiet, there's no drama," and added, "I've had a rough [eight] years already." Marcus said he wanted to live a "normal life." He told the foster parents he loved them and asked them to adopt him if he was unable to return home. Further, E.C.'s assertion she was willing to participate in court-ordered reunification services is belied by her lack of participation in voluntary services, unwillingness to communicate and cooperate with the social worker, and lack of consistent visitation with Marcus.

The juvenile court reasonably could conclude that E.C. had not provided a safe, stable home to Marcus and was unlikely to be able to do so, even if she was amenable to intensive substance abuse treatment, which she was not. Thus, there is substantial evidence to support the juvenile court's finding that reunification[4] was not in Marcus's best interests. (§ 361.5, subd. (c).)

---

4     Section 361.5, subdivision (c) requires the court to find that "*reunification*" with the parent is in the child's best interests, not "*reunification services*." (Italics added.) The juvenile court may provide child-centered services to a nonreunifying parent if it determines that the provision of services would be in the child's best interests. (*In re Alanna A.*, *supra*, 135 Cal.App.4th at p. 565.) Here, the juvenile court's concerns about the likelihood that E.C. would reunite with Mark and Marcus and continue to destabilize their circumstances may have warranted consideration whether the provision of *services* would be in Marcus's best interests. However, such services need not be offered or provided to a nonreunifying parent when the court determines that the parent's past performance does not merit further services. (*Ibid.*) When that is the case, as here, the possibility the child would derive some benefit from services provided to a nonreunifying parent is very limited.

DISPOSITION

The findings and orders are affirmed.


IRION, J.

WE CONCUR:


NARES, Acting P. J.


O'ROURKE, J.

11