37 Cal.Rptr.3d 579 (2005)
135 Cal.App.4th 555
In re ALANNA A., a Person Coming Under the Juvenile Court Law.
San Diego County Health and Human Services Agency, Plaintiff and Respondent,
v.
W.R., Defendant and Appellant.
No. D046690.
Court of Appeal, Fourth District, Division One.
December 14, 2005.
*580 Neil R. Trop for Defendant and Appellant.
John J. Sansone, County Counsel, Susan Strom, Chief Deputy County Counsel, Katharine R. Bird, Deputy County Counsel, for Plaintiff and Respondent.
M. Elizabeth Handy for the Minor.
AARON, J.
Alanna A.'s father, W.R., appeals an order terminating his reunification services at a 12-month review hearing under Welfare and Institutions Code[1] section 366.21. W.R. contends the court erred when it terminated his services at the 12-month review hearing, while at the same time extending reunification services to the child's mother, Krystal A.,[2] to the 18-month review date. He argues section 366.21, subdivision (h) allows the court to terminate reunification services to a parent at the 12-month review only when the court sets a hearing under section 366.26. W.R. further asserts the termination of his reunification services served no useful purpose and was therefore both an abuse of discretion and a denial of his right to substantive due process.
We conclude that the court's action at the 12-month review hearing was authorized by section 366.21, subdivision (g) and that section 366.21, subdivision (h) does not *581 bar termination of reunification services to one parent when services are extended for the other parent to the 18-month review date. In addition, the juvenile court did not abuse its broad discretion to fashion an order at the 12-month review hearing. We affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND
Alanna was born in November 2002. Her parents, W.R. and Krystal, lived together for a short time before she was born. They separated after an incident of domestic violence for which W.R. was arrested. Each parent struggled with intermittent homelessness and substance abuse.
After Alanna's birth, W.R. and Krystal briefly reconciled. The family lived together in the home of L.R., Krystal's former foster sister.[3] W.R. and Krystal separated in June 2003. W.R. cared for Alanna, staying alternately with his sister and L.R. In November 2003, Krystal moved back into L.R.'s home and W.R. returned Alanna to her care. In early January 2004, after Krystal had a violent confrontation with another roommate, L.R. told her to leave. L.R. refused to return Alanna to Krystal, asserting that Krystal neglected Alanna and that Krystal was using drugs.
In February 2004, Alanna came to the attention of the San Diego County Health and Human Services Agency (the Agency) after L.R. sought medical care for Alanna but did not have the legal authority to consent to treatment. The Agency filed a petition under section 300, subdivision (b), alleging that Alanna, then 14 months old, required the protection of the juvenile court due to parental neglect, substance abuse and domestic violence. The court made true findings at the jurisdiction hearing and placed Alanna in foster care.
W.R. filed a declaration stating that he did not know whether he was Alanna's father and requested paternity testing. W.R.'s name was not on Alanna's birth certificate and there were no prior judicial findings concerning paternity. After testing confirmed that W.R. was Alanna's father, the court recognized him as her biological father.
At the disposition hearing, the court ordered the Agency to provide family reunification services to W.R. and Krystal. Each parent was to participate in a domestic violence program, general counseling, parenting skill classes, and substance abuse counseling through the Substance Abuse Recovery Management System program (SARMS).
By the time of the six-month review in September 2004, Krystal had participated in services and had made "great progress." She was in a residential treatment program. In addition, Krystal maintained custody of an infant daughter born in August 2004. The court anticipated Krystal would reunify with Alanna shortly after the six-month review hearing.
In contrast, W.R. had "done very little." He did not enroll in SARMS. W.R. initially participated in other required programs but was dropped from counseling services and attended a domestic violence program only sporadically. Although he was "very affectionate" with Alanna and she enjoyed being with him, he stopped visiting her in June 2004.
In August 2004, W.R. was jailed for three days for failing to enroll in SARMS. He failed to enroll after again being ordered to do so. He did not appear for the six-month review hearing in September. At that hearing, the court issued a warrant *582 for his arrest and terminated his enrollment in SARMS to open a place for someone who would take advantage of the program. With that exception, the court continued reunification services to both parents.
Soon after the six-month review hearing, Alanna was placed on a 60-day home visit with Krystal. In December 2004, the Agency filed a supplemental petition under section 387 alleging that Krystal was unable to care for Alanna because Krystal had left the infant sibling unsupervised and unattended. The court detained Alanna in foster care. The social worker reported that Krystal had been consistently participating in her "entire case plan," but that she appeared to be suffering from post-partum depression.
During the second six-month review period, W.R. did not visit Alanna and did not remain in contact with the social worker. In February 2005, he was arrested on a SARMS warrant and was briefly incarcerated. In March, W.R. began the SARMS program. Within three weeks, he was out of compliance and the court issued another warrant for his arrest. At a subsequent hearing, W.R. again agreed to participate in Drug Court and again failed to contact SARMS. He was incarcerated and ordered to report to SARMS upon release. In April, W.R. entered a residential treatment facility.
At the 12-month review hearing in May 2005, W.R. contested the Agency's recommendation that his reunification services be terminated. He testified that he had been homeless and "slipped off the face of the earth for a little bit." W.R. had been sober for 34 days.[4] The residential program was beneficial and included group therapy. He had tried but had not been able to visit Alanna in April and May because of program restrictions on visiting hours and the foster parent's schedule. W.R. had not seen Alanna in almost a year. He apologized to the court for needing "a break" when "everything was coming at me at once."
Krystal was consistently working with service providers. However, due to concerns about the stability of her mental health, the Agency believed the prognosis for reunification to be poor. Nevertheless, the Agency recommended continuing Krystal's court-ordered services until the 18-month review date.[5]
The court stated that, although not legally required, it would normally continue services to both parents even if only one parent had a realistic chance for reunification. However, here, the court was not going to provide W.R. that opportunity. W.R. did not comply with case plan requirements and had not made an effort to visit Alanna until recently.
The court terminated W.R.'s reunification services. At W.R.'s request and as a service to Alanna, the court ordered his continued participation in Drug Court and authorized supervised visitation. The court found that Krystal had consistently and regularly visited Alanna and that she *583 made "some progress" with her case plan. The court continued Krystal's reunification services to the 18-month review date. In the minute order, the court recited the findings required by section 366.21, subdivision (g)(1)(A), (B) and (C).

DISCUSSION
This case presents a question of first impression. When a section 366.26 hearing is not set, does the court have the discretion at the 12-month review to terminate reunification services to one parent while at the same time continuing services to the other parent until the 18-month review date? W.R. asserts that the court has the statutory power to terminate reunification services at the 12-month hearing only under "narrowly limited circumstances." (In re Natasha A. (1996) 42 Cal.App.4th 28, 35, 49 Cal.Rptr.2d 332.) He argues that section 366.21, subdivision (h) allows the court to terminate reunification services only when it sets a hearing under section 366.26. He further contends that the court did not have a rational basis for terminating his services and that, considering the nature of his constitutionally protected interest in a relationship with his daughter, the court abused its discretion and violated his right to substantive due process.
The Agency responds that there is no language in the statutory framework that requires the court to treat both parents in the same manner, and states that each parent may take "different routes through the dependency system." The Agency asserts that the court acted within its discretion in terminating W.R.'s reunification services.

I

Issues of Law Are Not Forfeited on Appeal
The Agency argues that W.R. has forfeited the issue on appeal because he did not raise it in the trial court. Nevertheless, the Agency urges us to address the issue as a matter of first impression of broad public interest.
W.R. replies that the issue on appeal presents a question of law, which is not subject to the doctrine of forfeiture. (People v. Butler (1980) 105 Cal.App.3d 585, 588, 164 Cal.Rptr. 475; Ward v. Taggart (1959) 51 Cal.2d 736, 742, 336 P.2d 534.)
"As a general rule, a new theory may not be presented for the first time on appeal unless it raises only a question of law and can be decided on undisputed facts." (Piscitelli v. Friedenberg (2001) 87 Cal.App.4th 953, 983, 105 Cal.Rptr.2d 88; see People v. Superior Court (Zamudio) (2000) 23 Cal.4th 183, 195, 96 Cal.Rptr.2d 463, 999 P.2d 686.) W.R. does not assert any factual theory upon which he would be entitled to receive additional reunification services. He implicitly concedes that, absent Krystal's continued participation, it would have been within the court's discretion to terminate his services and refer the matter for a hearing under section 366.26. When the facts are not disputed, the effect or legal significance of those facts is a question of law. (Ghirardo v. Antonioli (1994) 8 Cal.4th 791, 799, 35 Cal.Rptr.2d 418, 883 P.2d 960.) We resolve questions of law de novo. (People v. Kennedy (2005) 36 Cal.4th 595, 608, 31 Cal.Rptr.3d 160, 115 P.3d 472; Robin J. v. Superior Court (2004) 124 Cal.App.4th 414, 420, 21 Cal.Rptr.3d 417.)

II

Statutory Construction
We exercise independent judgment when interpreting a legislative act. (People ex rel. Lockyer v. Shamrock Foods Co. *584 (2000) 24 Cal.4th 415, 432, 101 Cal.Rptr.2d 200, 11 P.3d 956.) In construing statutory enactments, we look to the words of the statutes to determine legislative intent and to fulfill the purpose of the law. (Gooch v. Hendrix (1993) 5 Cal.4th 266, 282, 19 Cal.Rptr.2d 712, 851 P.2d 1321; In re Heraclio A. (1996) 42 Cal.App.4th 569, 574, 49 Cal.Rptr.2d 713.) The language is construed in the context of the statute as a whole and the overall statutory scheme, and courts give significance to every word, phrase, sentence and part of an act in pursuing the legislative purpose. (People v. Canty (2004) 32 Cal.4th 1266, 1276, 14 Cal.Rptr.3d 1, 90 P.3d 1168.) Where the language of the statute is clear and unambiguous, we follow the plain meaning of the statute (ibid.) and need not examine other indicia of legislative intent. (Lungren v. Deukmejian (1988) 45 Cal.3d 727, 735, 248 Cal.Rptr. 115, 755 P.2d 299.) In the statutory framework of the dependency system, the term "shall is mandatory and may is permissive." (§ 15.)

III

Reunification Services and the Abuse of Discretion
Family reunification services play a "crucial role" in dependency proceedings. (In re Joshua M. (1998) 66 Cal.App.4th 458, 467, 78 Cal.Rptr.2d 110; In re Jamie M. (1982) 134 Cal.App.3d 530, 545, 184 Cal.Rptr. 778.) The child's case plan is the "guiding principle in the provision of these services." (§ 16501, subd. (a).) Services "may include provision of a full array of social and health services to help the child and family and to prevent reabuse of children." (§§ 300.2, 16501, subd. (h), Cal. Rules of Court, rule 1401(a)(6); see also 42 U.S.C. § 629a (a)(7).)[6] Reunification services are a benefit; a parent is not constitutionally entitled to services. (In re Aryanna C. (2005) 132 Cal.App.4th 1234, 1242, 34 Cal.Rptr.3d 288, citing In re Joshua M., supra, 66 Cal.App.4th at p. 476, 78 Cal.Rptr.2d 110; see also In re Baby Boy H. (1998) 63 Cal.App.4th 470, 478, 73 Cal.Rptr.2d 793.)
At the disposition hearing, unless the state proves by clear and convincing evidence that one of the exceptions to reunification under section 361.5, subdivision (b) applies, or the child is placed with the noncustodial parent under section 361.2, subdivision (b), the juvenile court must provide services designed to reunify the family within a statutory time period. (§ 361.5; see 42 U.S.C. § 629a (a)(7).) "[W]henever a child is removed from a parent's or guardian's custody, the juvenile court shall order the social worker to provide child welfare services to the child and the child's mother and statutorily presumed father or guardians." (§ 361.5, subd. (a), italics added.) However, presumed fathers possess greater rights than alleged or biological fathers. (Francisco G. v. Superior Court (2001) 91 Cal.App.4th 586, 596, 110 Cal.Rptr.2d 679.) The provision of reunification services to a biological father is discretionary; the court "may order [such] services . . . if the court determines the services will benefit the child." (§ 361.5, subd. (a), italics added.)
At the six-month review hearing, if the child remains in foster care and the goal remains family reunification, "the court shall direct that any reunification services previously ordered shall continue to be offered to the parent." (§ 366.21, subd. (e), *585 par. 6, italics added; Cal. Rules of Court, rule 1460(f)(11).) The court has the discretion to modify the terms and conditions of those services. (Ibid.) Thus, at the six-month date, the court's discretion to terminate services remains limited.[7]
At the 12-month review hearing, section 366.21, subdivision (g)(1) allows the court to continue reunification services for up to six months, provided the next review hearing occurs within 18 months of the date on which the child was physically removed from parental custody. In contrast to section 366.21, subdivision (e), which governs the six-month review, section 366.21, subdivision (g)(1) does not direct the court to continue to offer previously ordered services at the 12-month review hearing.[8] The provision of continued services is tempered only by the requirement that the court not proceed to a section 366.26 hearing at the 18-month review hearing unless there is clear and convincing evidence that reasonable services were provided or offered to the parent.[9] (§ 366.21, subd. (g)(1).)
W.R. contends that section 366.21, subdivision (h) requires that the court continue previously ordered reunification services at the 12-month review hearing unless the court sets a hearing under section 366.26. Section 366.21, subdivision (h) reads in part: "In any case in which the court orders that a hearing pursuant to Section 366.26 shall be held, it shall also order the termination of reunification services to the parent or legal guardian." (§ 366.21, subd. (h); see Cal. Rules of Court, rule 1461(d)(3).)
Section 366.21, subdivision (h) applies only when the court has set a hearing under section 366.26 after determining that further attempts at family reunification are futile and that the child needs the stability of a permanent home. Nothing in the clear language of the subdivision indicates that the Legislature intended section 366.21, subdivision (h) to apply when the court continues the case to the 18-month review date under section 366.21, subdivision (g)(1).
Further, the Legislature has granted the court the authority to direct its orders "as the court deems necessary and proper for the best interests of . . . the minor. These orders may concern the care, supervision, custody, conduct, maintenance, and support of the minor." (§ 245.5.) In the absence of any express limitation on the court's authority to terminate reunification services to a parent at the 12-month hearing, we conclude that the court did not abuse its discretion when it terminated reunification services to W.R.
If not for Krystal's determined efforts to reunify with Alanna, W.R. would not be eligible for services past the 12-month date. As a practical matter, however, where a nonreunifying parent[10] is likely to *586 have some continued contact with his or her child, further services to that parent may be in the child's best interests. Here, the court noted that in most circumstances it would have continued services to the other parent even when reunification with only one parent was realistic.[11] However, the court reasonably concluded that W.R.'s performance did not merit continued reunification services. (See § 366.21, subd. (g)(1)(A), (B), (C).)
Finally, W.R. argues his right to substantive due process was denied because there was no rational basis for the court to terminate his reunification services when the court did not immediately proceed to a permanency hearing. We disagree. Substantive due process prohibits governmental interference with a person's fundamental right to life, liberty or property by unreasonable or arbitrary legislation. (In re Marilyn H. (1993) 5 Cal.4th 295, 307, 19 Cal.Rptr.2d 544, 851 P.2d 826, citing In re David B. (1979) 91 Cal.App.3d 184, 192, 154 Cal.Rptr. 63.) The main purpose of limiting the period of reunification in a dependency proceeding is to afford the child stability and permanency where reunification is unlikely within the statutory time limits. (§§ 361.5, 366.21; see In re David B., supra, 91 Cal.App.3d at pp. 192-193, 154 Cal.Rptr. 63, In re Marilyn H., supra, 5 Cal.4th at p. 308, 19 Cal.Rptr.2d 544, 851 P.2d 826.)
As noted above, when reunification efforts continue for one parent after the 12-month review hearing, a court has the discretion to offer services to the nonreunifying parent, and in many cases may choose to do so. However, there is a secondary rationale for limiting services to the nonreunifying parent. The Legislature has recognized that in some circumstances, it may be fruitless to provide reunification services. (In re Baby Boy H., supra, 63 Cal.App.4th at p. 478, 73 Cal.Rptr.2d 793, citing Deborah S. v. Superior Court (1996) 43 Cal.App.4th 741, 750, 50 Cal.Rptr.2d 858.) In such a case, the general rule favoring reunification services is replaced by a legislative assumption that offering services would be an unwise use of governmental resources. (In re Baby Boy H., supra, at p. 793, 73 Cal.Rptr.2d 793, citing Raymond C. v. Superior Court (1997) 55 Cal.App.4th 159, 164, 64 Cal.Rptr.2d 33.)
W.R. was offered reunification services for 12 months. During the first few months, his compliance was marginal. From June 2004 to February 2005, it was nonexistent. In March and April 2005, the court made a determined effort to get W.R. into drug treatment, holding nine hearings in seven weeks on the issue of W.R.'s compliance with court-ordered reunification services. Considering the limited time remaining before the 18-month review date, the court reasonably concluded that further reunification efforts would be futile.
Resources available to the juvenile court are not unlimited. Although the court continued services in an effort to reunify Alanna with Krystal, there was a sufficient rational basis to justify termination of reunification services to W.R. Because W.R. did not avail himself of services and did not visit Alanna during most of the 12-month reunification period, constitutional considerations do not entitle him to additional services even though the case was continued to allow Krystal a further opportunity *587 to reunify. Under these circumstances, the termination of reunification services to one parent is rationally related to the legitimate government interest in focusing government resources on the parent who has consistently visited the child, made significant progress in resolving problems, and demonstrated the capacity and ability both to complete the treatment plan and provide for the child's needs. (§ 366.21, subd. (g)(1)(A), (B), (C).)

DISPOSITION
The order is affirmed.
WE CONCUR: BENKE, Acting P.J., and McINTYRE, J.
NOTES
[1] All statutory references are to the Welfare and Institutions Code unless otherwise specific.
[2] Krystal is not a party to this appeal.
[3] Krystal was a dependent of the juvenile court from 1980 to 1998.
[4] The record reflects that W.R. continued to do well in residential treatment. As of June 28, 2005, the last minute order in the record, he had 84 days of sobriety.
[5] The 12-month review date is held 12 months from the date of the jurisdiction hearing or 60 days from the date on which the child was physically removed from parental custody, whichever is earlier. (Cal. Rules of Court, rule 1401(a)(7)(A).) The 18-month review date is calculated from the time the child was physically removed from parental custody. (§ 366.22, subd. (a).) Here, due to the difference in calculations and a short delay in scheduling the contested 12-month review hearing, the 18-month review date was approximately three months after the conclusion of the 12-month contested review hearing.
[6] Time limited family reunification services include counseling, substance abuse treatment services, mental health services, assistance to address domestic violence, respite childcare and therapeutic services, and transportation to or from any of these services and activities. (42 U.S.C. § 629a, (a)(7)(B)(i-vi).)
[7] In a recent decision, the Third District Court of Appeal concluded that, depending on the circumstances presented, the court has the discretion to terminate previously ordered reunification services to a noncompliant parent prior to the six-month review date and held that a parent is not entitled to a prescribed minimum period of services. (In re Aryanna C., supra, 132 Cal.App.4th at pp. 1242-1243, 34 Cal.Rptr.3d 288.)
[8] The Agency incorrectly cites section 366.21, subdivision (f) on page 13 of its brief. The language cited is found in section 366.21, subdivision (e).
[9] Here, the court found that reasonable services were provided or offered to the parents but did not state on the record or in the minute order the standard of proof by which it made the finding.
[10] We use this term for convenience and note that even a parent for whom reunification is not anticipated or not likely may seek further review under section 388.
[11] We do not intend our holding to be interpreted so broadly as to mean termination of reunification services to one parent at the 12-month review date never constitutes an abuse of discretion. In some cases, the best interests of the child may necessitate the provision of services to a nonreunifying parent.