Filed 12/9/13  Marco V. v. Superior Court CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| MARCO V. et al., | D064414 |
| Petitioner, | |
| v. | (San Diego County Super. Ct. No. J518446C) |
| THE SUPERIOR COURT OF SAN DIEGO COUNTY, | |
| Respondent; | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY et al., | |
| Real Parties in Interest. | |

PROCEEDINGS in mandate after referral to a Welfare and Institutions Code section 366.26[1] hearing.  Cynthia Bashant, Judge.  Petition denied; request for stay denied.

Dependency Legal Group of San Diego and Elizabeth A. Klippi for Petitioner Marco V.

Dependency Legal Group of San Diego and Amanda J. Gonzales for Petitioner Cathey B.

---

[1]    Unless otherwise specified, all statutory references are to the Welfare and Institutions Code.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel and Lisa M. Maldonado, Deputy County Counsel, for Real Party in Interest San Diego County Health and Human Services Agency.

Marco V. seeks review of juvenile court findings and orders denying family reunification services to him under Welfare and Institutions Code section 361.5, subdivision (a) and setting a section 366.26 hearing.  Marco asserts he has a fundamental right to parent his child.  He argues the application of section 361.5, mandating reunification services to mothers and statutorily presumed fathers, and Family Code section 7611, describing a presumed father, contravenes his rights to due process and equal protection under the law as a biological father who cannot attain presumed father status under statutory criteria.  Marco maintains that he and his child's mother and presumed father are similarly situated and therefore under principles of equal protection, he is entitled to court-ordered family reunification services.[2]

Reviewing courts have long recognized that the presumed father statute and related statutory schemes violate the federal constitutional guarantees of equal protection and due process for unwed fathers to the extent the statutes allow a mother or third party to preclude the child's biological father from becoming a presumed father.  (*Adoption of Kelsey S.* (1992) 1 Cal.4th 816 (*Kelsey S.*); *In re Jerry P.* (2002) 95 Cal.App.4th 793, 801-802 (*Jerry P.*).)  To avoid constitutional infirmity, a biological father who has been prevented by another party from meeting statutory requirements for presumed father status may show he has demonstrated a full commitment to his parental responsibilities and obtain a status equal to that of his child's mother.  (*Jerry P.*, at pp. 801-802.)

---

[2]     The child's mother, Cathy B., did not file a writ petition.  She joins in the argument and position of Marco.

Marco was not deprived of due process or equal protection of the law. He had the opportunity to establish his status as a *Kelsey S*. father. He also had the opportunity to receive discretionary services under section 361.5, subdivision (a) if he could show that services would benefit the child. Marco does not challenge the juvenile court's finding that ordering services to him would not benefit his child. In view of Marco's history of crime, repeated incarceration and drug use, the court did not abuse its discretion in denying reunification services to him. We deny the petition.

## FACTUAL AND PROCEDURAL BACKGROUND

Marco and Cathy are the parents of Michelle V., who was born healthy in June 2013. Cathy had an open dependency case for two of her other children due to methamphetamine use. None of her seven children were in her care. Cathy tested positive for methamphetamine when she was six months pregnant with Michelle. The San Diego County Health and Human Services Agency (Agency) detained Michelle at birth and filed a section 300 petition alleging the child was at substantial risk of harm due to her mother's substance abuse and lack of amenability to treatment. (§ 300, subd. (b).)

At the time of Michelle's birth, Cathy was married to Fernando B., who was serving a lengthy prison term in Arizona. Their divorce was pending. Marco was in jail in San Diego County. He had been arrested in December 2012 on charges of battery, assault and conspiracy to commit auto theft. Marco had a conviction for possession of controlled substances with intent to sell. He was subject to a gang injunction and had been involved with the juvenile and criminal justice systems since he was 12 years old. Marco last worked in 2009 or 2010.

3

At the detention hearing, the juvenile court appointed counsel for Marco and authorized paternity testing. The court designated Cathy's husband, Fernando, as Michelle's presumed father.

Marco was released from jail the day after the detention hearing. He and Cathy lived together at his mother's house. Paternity testing confirmed that Marco was Michelle's father. Michelle was placed with her paternal aunt (caregiver). Marco and Cathy visited Michelle three times a week at her caregiver's home. The social worker observed that Marco and Cathy were attentive to Michelle's needs and spoke to her in a loving manner.

The Agency recommended the court not order reunification services to Cathy, Fernando and Marco, and schedule a hearing to select and implement a permanency plan for Michelle under section 366.26.

Shortly before the jurisdictional and dispositional hearing, Marco filed a motion to be designated a presumed parent under the Due Process and Equal Protection Clauses of the United States Constitution and *Kelsey S.* Marco acknowledged he did not qualify for presumed father status under any provision of Family Code section 7611.

The juvenile court construed Marco's motion as a request for *Kelsey S.* status. Marco testified he wanted to participate in reunification services as Michelle's presumed father. The Agency had given him referrals to voluntary substance abuse treatment services but he had not enrolled because he went to an address that was no longer current. Marco attended Narcotics Anonymous meetings at least once a week. He contacted a parenting program but needed authorization from the social worker to enroll. He did not complete a drug test because he had too much to do and no transportation. Marco visited Michelle three times a week. He knew

4

Cathy was pregnant before he was incarcerated. She visited and telephoned him while he was in jail. He asked her about the baby and her health and pregnancy. Marco was willing to accept full responsibility for Michelle. Marco had three other children with two different mothers. The children's mothers would not let him see his children. He did not know where they lived.

The juvenile court found that Marco did not show a full commitment to his parental responsibilities during Cathy's pregnancy. Marco knew Cathy was pregnant before he was incarcerated. His own actions kept him from supporting her, attending prenatal visits and being present at Michelle's birth. Although Marco "stepped up to the plate" after Michelle's birth, he struggled to keep appointments for services that would allow him to parent his daughter. The juvenile court denied Marco's motion for *Kelsey S.* status and proceeded to the jurisdictional and dispositional hearing.

Cathy testified she and Marco visited Michelle three days a week. They talked to her, changed her diaper and fed her. She discussed her participation in substance abuse treatment and other services. Her efforts were different this time because she had the support and love of Marco and his family. Cathy was aware Marco had a history of methamphetamine use.

The social worker said Cathy had participated in substance abuse treatment services for six weeks. Her parental rights to two of Michelle's half siblings were terminated two weeks earlier. The social worker referred Marco to the substance abuse specialist on June 28 and July 5, 8, 29 and 30, but he had not yet attended an intake or started a program. Marco, who was 22 years old, had an extensive criminal history. He spent most of his adult life in and out of jail. Marco failed to drug test when asked. The social worker said it was not in Michelle's best

5

interests to provide services to Marco or Cathy. Michelle needed caregivers who placed her needs first and would not jeopardize her well-being by a lifestyle associated with drugs and crime.

The juvenile court sustained the section 300 petition by clear and convincing evidence, removed Michelle from Cathy's custody and found that placement with Marco or Fernando would be detrimental to Michelle. The court denied reunification services to Cathy and Fernando. (§ 361.5, subds. (b)(10), (11), (13) & (e)(1).) The court found that ordering services for Marco would not benefit Michelle and denied his request for services. (§ 361.5, subd. (a).) The court set a section 366.26 hearing for December 11, 2013.

Marco petitioned for review of the juvenile court's orders. (§ 366.26, subd. (*l*); Cal. Rules of Court, rule 8.452.) He asks this court to reverse the orders setting a section 366.26 hearing, and to remand the matter with directions to the juvenile court to enter an order for family reunification services. This court issued an order to show cause, the Agency responded and the parties waived oral argument.

## DISCUSSION

Marco asserts he has a fundamental right to parent his child. He argues the application of section 361.5, coupled with his inability to meet criteria for presumed father status under Family Code section 7611, violates his rights to due process and equal protection as guaranteed by the United States Constitution. Marco further contends the juvenile court applied too stringent a standard for determining *Kelsey S.* status. He argues his circumstances with respect to family reunification are similar or better than those of his child's mother and presumed

6

father and the disparate treatment he receives under the statutory scheme violates his right to equal protection.

A challenge to the constitutionality of a statutory scheme is a question of law subject to de novo review.  (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 801.)

A

*Marco's Rights to Due Process and Equal Protection Were Not Violated*

The California dependency system differentiates between the rights of presumed, natural and alleged fathers.  (*In re Zacharia D.* (1993) 6 Cal.4th 435, 448 (*Zacharia D.*).)  "[N]atural fathers [have] far less rights than both mothers and presumed fathers have under California's statutory system."  (*Kelsey S.*, *supra*, 1 Cal.4th at p. 844.)  To become a presumed father, a man must meet one or more of the criteria specified in Family Code section 7611.  (*Zacharia D.*, at p. 451.)  Under the California dependency scheme, only mothers and statutorily presumed fathers are entitled to court-ordered reunification services.  (§ 361.5, subd. (a).)[3]

---

3      We reject Marco's assertion that biological fathers, without any further showing, have rights equal to those of the child's mother in dependency cases.  There is a rational relationship to affording a biological father less rights in dependency cases than a mother or presumed father.  Not mandating services to a biological father is rationally related to the furtherance of a legitimate government interest in conserving resources and protecting children and their families.  The biological father of the child may be a rapist or a sperm donor, his identity may be unknown or he may have no interest in parenting his child.  (See *In re Jerry P., supra,* 95 Cal.App.4th at pp. 801-802.)  Mandating family reunification services to all biological fathers regardless of their circumstances and relationship to the child would expend scarce public resources and not serve the best interests of the child and his or her family.  (Cf. *In re Alanna A.* (2005) 135 Cal.App.4th 555, 566 [in some circumstances, the general rule favoring reunification services is replaced by a legislative assumption that offering services would be an unwise use of government resources].)

7

In 1992, the California Supreme Court addressed the claim the statutory scheme impermissibly allowed a mother to preclude her child's father from acquiring presumed father status and eliminate his need for consent to an adoption regardless of whether he was a demonstrably fit parent. (*Kelsey S.*, *supra*, 1 Cal.4th at p. 825.) The petitioner in that case asserted the statutory scheme violated his federal constitutional rights to equal protection and due process rights; specifically, that he should not be treated differently than his child's mother. (*Id*. at p. 844.)

*Kelsey S.* holds that the presumed father statute and related adoption statutory scheme "violates the federal constitutional guarantees of equal protection and due process for unwed fathers *to the extent that* the statutes allow a mother unilaterally to preclude her child's biological father from becoming a presumed father and thereby allowing the state to terminate his parental rights on nothing more than a showing of the child's best interest. If an unwed father promptly comes forward and demonstrates a full commitment to his parental responsibilities--emotional, financial, and otherwise--his federal constitutional right to due process prohibits the termination of his parental relationship absent a showing of his unfitness as a parent. Absent such a showing, the child's well-being is presumptively best served by continuation of the father's parental relationship. Similarly, when the father has come forward to grasp his parental responsibilities, his parental rights are entitled to equal protection as those of the mother." (*Kelsey S., supra,* 1 Cal.4th at p. 849.)

In 2002, the Second District Court of Appeal applied the constitutional analysis in *Kelsey S.* to dependency proceedings. (*Jerry P.*, *supra*, 95 Cal.App.4th at pp. 810-811.) *Jerry P.* holds that the scheme for determining presumed father status in dependency proceedings is

8

unconstitutional insofar as it permits the mother or a third party unilaterally to preclude a man from becoming a presumed father by preventing him from receiving the child into his home despite his demonstration of a full commitment to his parental responsibilities before and after the child's birth.  (*Id*. at pp. 802-803.)

Like the fathers in *Kelsey S*. and *Jerry P*., Marco was unable to qualify as a presumed father under Family Code section 7611, subdivision (d), which provides that a man is presumed to be a natural father of a child if he receives the child into his home and openly holds out the child as his own.  No other provision of Family Code section 7611 would apply. Marco did not have any opportunity to bring Michelle into his home because the Agency had custody of her from birth.  He did, however, have the opportunity both before and after his daughter's birth to demonstrate his full commitment to his parental responsibilities.  Any unconstitutional inequities that may be present in the statutory scheme were remedied by the juvenile court's consideration of Marco's request for presumed father status under *Kelsey S*. Marco's rights to due process and equal protection were not violated.

B

*The Juvenile Court Correctly Applied the Kelsey S. Factor*s

Marco complains the juvenile court applied too stringent a standard when determining whether he had demonstrated a full commitment to his daughter.  He contends in view of his incarceration it was unfair of the juvenile court to consider such factors as whether he attended mother's prenatal visits, provided financial support to the mother, paid for medical expenses, took legal action to establish paternity before the child was born and was present at the hospital when the child was born.  Marco argues the application of these factors is the equivalent of "

9

'go to prison, lose your child' " and is not permissible under California law. (*In re Brittany S.* (1993) 17 Cal.App.4th 1399, 1402.)

In deciding whether a man qualifies for *Kelsey S.* status, a court considers all factors relevant to whether the biological father has assumed his parental responsibilities as fully as circumstances permit. "The father's conduct both *before and after* the child's birth must be considered." (*Kelsey S.*, *supra*, 1 Cal.4th at p. 849.) Once he knows or reasonably should know of the pregnancy, he must promptly attempt to assume his parental responsibilities and demonstrate a willingness to assume full custody of his child. A court should also consider the father's public acknowledgement of paternity, payment of pregnancy and birth expenses commensurate with his ability to do so, and prompt legal action to seek custody of the child. (*Ibid.*) These factors were formulated in the context of an adoption case in which the child's mother wanted to place the child for adoption over the objection of his presumptively fit father, who wanted to raise his son. (*Id.* at pp. 821-822, 849.)

Marco's circumstances are different. The juvenile court's remarks focused on the fact Marco knew that Cathy was pregnant with his child *before* he was arrested and jailed. The court reasonably inferred that Marco's decision to continue his criminal activities, with the attendant risk of incarceration, did not evince a full commitment to his parental responsibilities before Michelle's birth. (*Jerry P.*, *supra*, 95 Cal.App.4th at pp. 802-803.) The court did not abuse its discretion when it distinguished between a situation in which the child's mother prevented the child's biological father from attending prenatal appointments and being present at the hospital and a situation in which the biological father's life choices prevented him from assuming his parental responsibilities. The juvenile court did not apply an incorrect legal

10

standard when it determined that Marco did not promptly attempt to assume his parental responsibilities. (*Kelsey S.*, *supra*, 1 Cal.4th at p. 849; *Jerry P.*, *supra*, 95 Cal.App.4th at pp. 802-803.)

After Michelle was born, Marco visited her regularly. He and Cathy continued their relationship, and Marco's family was involved in Michelle's care. The juvenile court gave Marco credit for his actions. The court also found that Marco was having problems meeting his responsibilities to address the issues that would prevent him from safely parenting Michelle. Although Marco said he was fully committed to his daughter, he told the social worker he was "not going to be rushing trying to get things done as fast as possible. . . . I want to get my daughter back and I am going to do what I have to do. I am just not going to be jumping through hoops trying to get everything done." The social worker referred Marco to a substance abuse specialist in late June, and gave him four additional referrals in July. By mid-August, Marco had not attended an intake or started treatment. He missed a drug test. Marco squandered his opportunity to demonstrate his commitment to his parental responsibilities when he chose to delay participating in the services that would stabilize his circumstances and improve his ability to safely parent his daughter. The juvenile court could reasonably conclude that Marco did not demonstrate a full commitment to his parental responsibilities and did not abuse its discretion when it denied Marco's request for *Kelsey S.* status. (*Kelsey S.*, *supra*, 1 Cal.4th at p. 849; *Jerry P.*, *supra*, 95 Cal.App.4th at pp. 802-803.)

11

## DISPOSITION

The petition is denied.  The request for stay is denied.


O'ROURKE, J.

WE CONCUR:


HUFFMAN, Acting P. J.


AARON, J.