Filed 1/13/15  In re Emmanuel E. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re EMMANUEL E., a Person Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | D066472 |
| Plaintiff and Respondent, | (Super. Ct. No. J518802A) |
| v. | |
| ANGELICA C., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Kimberlee A. Lagotta, Judge.  Affirmed.

Monica Vogelmann, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Lisa Maldonado, Deputy County Counsel, for Plaintiff and Respondent.

At the six-month hearing, the juvenile court granted the modification petition (Welf. & Inst. Code, § 388, subd. (c))[1] of dependent child Emmanuel E. and terminated the reunification services for his mother, Angelica C. Angelica appeals, contending that the court abused its discretion in granting the petition. We affirm.

BACKGROUND

In October 2013, the San Diego County Health and Human Services Agency (the Agency) filed a dependency petition for eight-year-old Emmanuel. The petition alleged that Emmanuel was exposed to violent confrontations between Angelica and his stepfather, Jesse M. Despite the Agency's provision of voluntary services, Angelica continued to argue with Jesse in Emmanuel's presence and intended to remain in a relationship with Jesse.

At the detention hearing, the court ordered Emmanuel detained with Angelica "as long as Jesse . . . is not around [Emmanuel] and as long as [Angelica] remains in the maternal grandmother's home." One week later, the Agency received information that Jesse had been having contact with Emmanuel and Angelica. Emmanuel was detained in Polinsky Children's Center.

In November 2013, the court made a true finding on the petition, ordered Emmanuel placed with the paternal grandmother and ordered reunification services for Angelica and Emmanuel's presumed father, Pedro E. Angelica's case plan included individual counseling, a domestic violence program and a parenting course.

---

1    Further statutory references are to the Welfare and Institutions Code.

2

In July 2014, Emmanuel's counsel filed a section 388 petition. The petition alleged that Angelica had completed none of her case plan, had not enrolled in domestic violence treatment and had attended therapy only sporadically, having canceled most of the scheduled sessions. The petition alleged that visits were infrequent and Angelica did "not engage with Emmanuel during the visits."

At the contested six-month review hearing in August 2014, the court granted the section 388 petition and terminated Angelica's services. The court continued Emmanuel's relative placement, continued services for Pedro and set a 12-month review hearing for November 2014.

DISCUSSION

"[A] child who, on the date of initial removal from the physical custody of his or her parent . . . , was three years of age or older" (§ 361.5, subd. (a)(1)(A)), may petition for termination of reunification services before the 12-month review hearing (§ 366.21, subd. (f)) under certain conditions. The condition relevant here occurs when "[t]he action or inaction of the parent . . . creates a substantial likelihood that reunification will not occur, including, but not limited to, the parent's . . . failure to visit the child, or the failure of the parent . . . to participate regularly and make substantive progress in a court-ordered treatment plan." (§ 388, subd. (c)(1)(B).) In such a case, "[t]he court shall terminate reunification services . . . only upon a finding by a preponderance of evidence that reasonable services have been offered or provided, and upon a finding of clear and convincing evidence that . . . the condition[] in subparagraph . . . (B) of paragraph (1) exists." (*Id.*, subd. (c)(3).)

3

On appeal, we first determine whether the required factual findings are supported by substantial evidence. (*In re M.V.* (2006) 146 Cal.App.4th 1048, 1059-1060.) If substantial evidence supports the required findings, we then decide whether the juvenile court abused its discretion in terminating reunification services based on those findings. (*In re Jasmon O.* (1994) 8 Cal.4th 398, 415.) In the instant case, we conclude that there is substantial evidence supporting the findings, and that the court did not abuse its discretion in granting Emmanuel's modification petition and terminating Angelica's services.[2]

The social worker referred Angelica to services at the outset of the case. Throughout the case, Angelica failed to stay in contact with the social worker. In addition, Angelica continued to have contact with Jesse. Her participation in services was inconsistent, and she blamed others and made excuses for her failure to comply.

Angelica signed up for a domestic violence program in January 2014, but failed to appear for her intake appointment. A second appointment was scheduled, but Angelica again failed to appear. In July, she began attending a different domestic violence

---

[2]     Angelica contends that "the refusal to offer further services to assist [her] is contrary to [Emmanuel's] best interests . . . as well as the permanent plan of reunification . . . ." She cites section 388, subdivision (a), which allows modification of an order based on changed circumstances or new evidence, if modification would promote the child's best interests. (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 806.) Here, the court cited section 388, subdivision (c)(B), but also found that there had been a change of circumstances justifying the termination of services. Under either subdivision (a) or (c) of section 388, the court properly granted Emmanuel's petition. "[W]e review the lower court's ruling, not its reasoning; we may affirm that ruling if it was correct on any ground." (*In re Natasha A.* (1996) 42 Cal.App.4th 28, 38.)

program.  By the time of the hearing, she had attended only four domestic violence classes, and had been late to three of them.

In January 2014, Angelica failed to appear for her therapy intake appointment with Lorena Aguila, Ph.D.  Angelica did attend an intake appointment one week later, but failed to schedule a subsequent appointment and did not return Dr. Aguila's telephone calls.  In May, Dr. Aguila recommended a psychological evaluation.  Angelica believed that this meant that Dr. Aguila thought she was "crazy," and asked the social worker for a referral to a different therapist.  Angelica then claimed that she had begun individual therapy with her domestic violence instructor, who had not been approved by the Agency to provide individual therapy.  The instructor scheduled a therapy appointment in July, but Angelica failed to appear for the appointment.  By the time of the hearing, Angelica had attended six therapy sessions, all with Dr. Aguila, and had missed six.  Of the six sessions that she had attended, Angelica had been late to at least two.

By January 2014, Angelica had enrolled in a parenting program.  She attended one class and then quit.  In July, Angelica returned to the program.  By the time of the hearing, she had attended four of 11 classes.

Angelica's visitation with Emmanuel was inconsistent.  She often failed to appear for scheduled visits.  When she did appear, she was often late.  During visits, Angelica paid little attention to Emmanuel.  Her inconsistent visitation upset him.  At the time of the hearing, Angelica had not spoken to Emmanuel on the telephone for more than a month.  Despite this, Emmanuel enjoyed visits with Angelica, loved her and Pedro and wanted to go home with both of them.

5

Angelica argues that the court should have continued her services because "once custody is granted to Pedro, Pedro and Angelica will need to co-parent." "As a practical matter, . . . where a nonreunifying parent is likely to have some continued contact with his or her child, further services to that parent may be in the child's best interests." (*In re Alanna A*. (2005) 135 Cal.App.4th 555, 565, fn. omitted.) However, as the Agency points out, there is no evidence that Angelica will be co-parenting with Pedro. Moreover, "[t]he Legislature has recognized that in some circumstances, it may be fruitless to provide reunification services. [Citations.] In such a case, the general rule favoring reunification services is replaced by a legislative assumption that offering services would be an unwise use of governmental resources." (*Id*. at p. 566.) Such is the case here.

## DISPOSITION

The judgment is affirmed.


AARON, J.

WE CONCUR:


McINTYRE, Acting P. J.


IRION, J.

6