Filed 5/25/21  In re K.A.L. CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re K.A.L., a Person Coming Under the Juvenile Court Law. | B308436 (Los Angeles County Super. Ct. No. 19CCJP00514) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,  Plaintiff and Respondent,  v.  L.A.,  Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Stephen C. Marpet, Temporary Judge. Affirmed.

Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Jane Kwon, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

The Los Angeles County Department of Children and Family Services (DCFS) asserted dependency jurisdiction pursuant to Welfare and Institutions Code section 300, subdivisions (a), (b)(1), and (j)[1] over 13-day old K.A.L. because K.A.L.'s mother (mother) had abused narcotics, K.A.L.'s father (father) allowed mother to have unlimited access to the child, and mother and father had a history of violent altercations.  The juvenile court sustained the petition in its entirety, declared K.A.L. a dependent of the court, removed K.A.L. from parental custody, ordered DCFS to provide family reunification services to K.A.L.'s parents, and required mother and father to complete their respective case plans.  Regarding father's case plan, the juvenile court ordered father to attend a 26-week domestic violence course, take a parenting class, participate in conjoint counseling with mother and in individual counseling, and complete 24 anger management classes.

Later during the dependency proceedings, mother accused father of striking her repeatedly, causing her to suffer a broken nose and fractured jaw and multiple bruises on her body.  Father denied the allegations, claimed mother assaulted him, and asserted mother sustained her injuries when he pushed her off him.  Mother obtained a restraining order against father.  At a

---

[1] Undesignated statutory citations are to the Welfare and Institutions Code.

2

status review hearing held nearly a year after the juvenile court issued its dispositional rulings, the court found that the parents had not made substantial progress in their case plans, and terminated father's family reunification services, but continued to offer reunification services to mother and to allow father monitored visits with K.A.L.

On appeal, father argues the juvenile court abused its discretion in terminating his reunification services because he will continue to have contact with K.A.L. and he completed part of his case plan. We disagree.

The fact that father can visit K.A.L., by itself, does not establish the juvenile court erred. Furthermore, the juvenile court reasonably could have concluded father's assault on mother demonstrated that his continued participation in domestic violence and anger management courses would have been futile. The court also rationally could have found that because father perpetrated this act of violence against mother, he could no longer satisfy the conjoint counseling requirement of his case plan. Although father completed a parenting course, the record supports the juvenile court's finding that father did not make substantial progress on other aspects of his case plan. Additionally, in the months preceding the status review hearing, father barely visited K.A.L., suggesting he no longer had a genuine interest in taking the steps necessary to reunite safely with K.A.L. Finding no abuse of discretion, we affirm the juvenile court's order terminating father's reunification services.

## FACTUAL AND PROCEDURAL BACKGROUND

We summarize only those facts relevant to this appeal.

On September 12, 2019, DCFS filed a juvenile dependency petition alleging jurisdiction under section 300, subdivisions (a), (b)(1), and (j) over K.A.L., who was then 13 days old and was being detained in foster care. The petition contained four counts: counts a-1, b-1, b-2, and j-1.

Counts a-1 and b-2 of the petition alleged the following: "[K.A.L.'s] mother . . . and father . . . have a history of engaging in violent altercations. In 2019, the father grabbed the mother's hair and pulled the mother's body from a vehicle when the mother was pregnant with the child. On prior occasions, the father struck the mother in the presence of the child's sibling, [R.K.L.] . . . . The father demonstrates agitated and erratic behaviors. The child's mother . . . failed to protect the child and the mother allowed the father to have unlimited access to the child's sibling, [R.K.L.] Such violent conduct on the part of the father against the mother and the mother's failure to protect the child's sibling, [R.K.L.,] endangers the child's physical health and safety and places the child at risk of serious physical harm, damage, danger and failure to protect."

Counts b-1 and j-1 averred: "[K.A.L.'s] mother . . . has a history of substance abuse including methamphetamine and marijuana and is a current abuser of methamphetamine which renders the mother incapable of providing regular care of the child. The child's father . . . failed to take action to protect the child when the father knew of the mother's substance abuse. The child is of such a young age as to require constant care and supervision, the mother's substance abuse interferes with providing regular care and supervision of the child. The child's

4

sibling[s], [K.A.B.C.] . . . and [M.P.M.L.,] . . . are former dependents of the Juvenile Court and received Permanent Placement services due to the mother's substance abuse. The child's sibling, [R.K.L.,] . . . is a current dependent of the Juvenile Court due to the mother's substance abuse. Such substance abuse by the mother and the father's failure to protect the child endangers the child's physical health and safety and places the child at risk of serious physical harm, damage and failure to protect."

The juvenile court held a detention hearing on September 13, 2019. The court declared father to be K.A.L.'s presumed father, found a prima facie case that K.A.L. is a person described by section 300, detained K.A.L. from mother and father, and ordered DCFS to provide family reunification services to mother and father.

On November 18, 2019, the juvenile court held an adjudication and disposition hearing. The court sustained the entirety of the petition, declared K.A.L. a dependent of the court, removed her from mother's and father's custody, and ordered DCFS to provide family reunification services to K.A.L.'s parents.[2] Father's case plan obligated him to complete a 26-week

_____

[2] The reporter's transcript shows the court ruled that "the entire petition [was] sustained as pled," whereas one passage of the minute order for the hearing suggests the court sustained only the counts alleged under section 300, subdivisions (a) and (b)(1). Conversely, another portion of the minute order provides that "[t]he court . . . will sustain the 300 Petition as pled." To the extent there is any inconsistency between the reporter's transcript and the minute order, we assume the reporter's transcript is accurate. (See *In re Hannah D.* (2017) 9 Cal.App.5th 662, 680 & fn. 14.)

domestic violence class and a parenting class, participate in conjoint counseling with mother and in individual counseling, and comply with any criminal court orders and conditions of probation.[3]  The court authorized mother and father to have monitored visits with K.A.L.

On May 5, 2020, DCFS filed a status review report.  In the report, DCFS stated that father had completed a 12-hour parenting course.

On June 11, 2020, DCFS filed an interim review report.[4] Father's anger management program informed DCFS that it had dismissed father from the program on January 15, 2020 because father failed to attend classes for more than 30 days.  An employee of the anger management program stated that because it is "a referral-based program, . . . father would need to go back to Criminal Court and request a reenrollment form in order to reenroll into [the] Anger Management classes."  Father had participated in at least some of mother's weekly videocalls with K.A.L., although DCFS did not specify in its June 11, 2020 interim review report the precise frequency of father's virtual visits with the child.  In addition, the parents' therapist reported

---

[3]  The jurisdiction/disposition report indicates that father was convicted of battery on August 19, 2019 and was placed on summary probation for 36 months.  According to the report, father disclosed that the battery conviction arose out of an altercation father had with another man, and that the criminal court had ordered him to complete 24 anger management classes and nine days of community labor.

[4]  The remainder of this paragraph summarizes relevant aspects of the June 11, 2020 interim review report.

6

on June 4, 2020 that mother and father had completed five conjoint counseling sessions.

On August 20, 2020, DCFS filed a last minute information report.[5] Mother told DCFS that on August 15, 2020, while she and father were visiting a place at which they had lived when they were homeless, mother grabbed father's arm and asked to leave the area, and father responded by striking mother several times. Mother claimed that as she ran away from father, mother saw that father was pointing a gun at her. Mother asserted that when she later arrived at her apartment, father was waiting outside, and he subsequently followed her into the apartment and "started hitting her and arguing with her." Mother maintained that father fled the scene, and she sustained "a broken nose and fractures on her jaw and multiple bruises all over her body." Mother claimed that she changed the lock to the front door of the apartment where she resided at that time, was "taking father's name out of her leasing contract," and had obtained a restraining order against father that was scheduled to expire on August 21, 2020.

On August 27, 2020, mother filed a request for a temporary restraining order protecting her from father because of the August 15, 2020 incident. Later that day, a temporary restraining order was issued that expired on September 2, 2020.

On September 2, 2020, the juvenile court issued a temporary restraining order to protect mother, which was scheduled to expire on October 23, 2020.

---

[5] The remainder of this paragraph summarizes relevant aspects of the August 20, 2020 last minute information report.

7

On October 13, 2020, DCFS filed an interim review report.[6] Father's domestic violence program reported that as of September 24, 2020, he had completed 10 out of 26 weekly classes. "Due to Domestic Violence between the parents and a [then-]current restraining order, they [were] not going to attend any Conjoint counseling." Father's individual therapist reported father had enrolled in mental health services on July 14, 2020, and, as of September 29, 2020, father had completed nine individual therapy sessions. On September 28, 2020, father told DCFS that he had not yet been able to reenroll in anger management courses because the next criminal court hearing at which he could request reinstatement in the program had been continued. From July 2020 to September 2020, father had only four visits with K.A.L.: a 31-minute videocall on July 17, 2020; an 8-minute videocall on July 26, 2020; a 26-minute video call on August 3, 2020; and a 4-minute videocall on August 26, 2020.

Father told the agency that during the August 15, 2020 incident, mother repeatedly hit father on the back of his head with her fist and a shovel.[7] Father further claimed that when he pushed mother off of him, she tripped on a pile of clothes and hit her face on a crib.

---

[6] The remainder of this paragraph and the following paragraph summarize relevant aspects of the October 13, 2020 interim review report.

[7] Although the October 13, 2020 interim review report stated that father claimed this incident occurred on August 14, 2020, the parties tacitly agree father had intended to refer to the August 15, 2020 incident.

On October 23, 2020, the juvenile court held a status review hearing pursuant to section 366.21, subdivision (e).[8] The juvenile court found by clear and convincing evidence that returning K.A.L. to the physical custody of her parents would create a substantial risk of detriment to the child, and ordered that K.A.L. remain in foster care. The court also found that the extent of the parents' progress towards alleviating or mitigating the causes necessitating out-of-home placement had not been substantial. The court terminated father's family reunification services,[9] but ordered DCFS to continue to offer reunification services to mother until the hearing scheduled for April 23, 2021.[10] The court also extended the expiration of the restraining order protecting mother to October 23, 2022.

On October 26, 2020, father timely appealed the juvenile court's October 23, 2020 findings and orders.

---

[8] Although the juvenile court initially scheduled this hearing for May 18, 2020, the court continued the hearing to October 23, 2020 in part because of the COVID-19 pandemic.

[9] The juvenile court did not make an explicit finding that continuing to provide father with reunification services was not in K.A.L.'s best interest.

[10] The juvenile court clarified that even after it terminated father's reunification services, he was still entitled to monitored visits with K.A.L.

Additionally, we sua sponte take judicial notice of the lower court's April 23, 2021 order that terminated mother's reunification services and scheduled a section 366.26 hearing. (See Evid. Code §§ 452, subd. (d), 459.) That order is not before us in this appeal.

9

## DISCUSSION

"[S]ection 366.21, subdivision (e) provides no express limitation on the court's authority to terminate reunification services to a parent at a six-month review hearing where the minor is under the age of three and the parent has received or been offered six months of services, regardless of whether the court sets a section 366.26 hearing or offers further services for the other parent. Under these circumstances, the juvenile court retains the discretion to terminate the offer of services to one parent." (*In re Jesse W.* (2007) 157 Cal.App.4th 49, 65 (*Jesse W.*); see also *id.* at p. 58 ["[A]t a six-month review hearing, the juvenile court retains the discretion to terminate the offer of services to one parent even if the other parent is receiving services and no section 366.26 hearing is set."]; § 366.21, subd. (e)(8) ["If the child is not returned to his or her parent or legal guardian, . . . . [t]he court shall order that [the] services [offered to the parent] be initiated, continued, or terminated."]; *In re D.N.* (2020) 56 Cal.App.5th 741, 758–759 [noting that at a section 366.26 hearing, the juvenile court decides whether to terminate parental rights].)

"Where, as here, the court continues one parent's services and does not set a section 366.26 hearing, . . . . [t]he [other] parent seeking additional services has the burden of showing such an order would serve the child's best interests. [Citations.] In exercising its discretion, the court has 'the ability to evaluate whether the parent will utilize additional services and whether those services would ultimately inure to the benefit of the minor.' [Citation.]" (See *In re Katelynn Y.* (2012) 209 Cal.App.4th 871, 881 (*Katelynn Y.*), quoting *Jesse W.*, *supra*, 157 Cal.App.4th at p. 66.) In conducting this analysis, the lower court may consider

the extent to which the parent visited the minor and "avail[ed] himself or] herself of services offered and thus made . . . progress toward alleviating or mitigating the causes for . . . removal . . . ." (See *Katelynn Y.*, at p. 881; accord, *Jesse W.*, at p. 66; *In re Alanna A.* (2005) 135 Cal.App.4th 555, 565–566 (*Alanna A.*).)

"We will not disturb the court's determination [to terminate reunification services] unless the court has exceeded the limits of legal discretion by making an arbitrary, capricious or patently absurd determination. When two or more inferences reasonably can be deduced from the facts, we have no authority to reweigh the evidence or substitute our judgment for that of the juvenile court."[11] (See *Katelynn Y.*, *supra*, 209 Cal.App.4th at p. 881.)

_____

[11] DCFS argues we should review whether the record contains substantial evidence that there was no substantial probability K.A.L. could have been returned to father's custody if he had continued to receive reunification services. DCFS relies on *J.H. v. Superior Court* (2018) 20 Cal.App.5th 530, 533, 535 [juvenile court set a section 366.26 hearing after terminating a father's reunification services at the 12-month review hearing], and *Fabian L. v. Superior Court* (2013) 214 Cal.App.4th 1018, 1022, 1028, 1031–1032 (*Fabian L.*) [substantial evidence supported terminating the incarcerated father's services at the six-month hearing], for this proposition. We need not decide whether DCFS has identified the correct standard of review. First, regardless of whether we review the juvenile court's decision for abuse of discretion or substantial evidence, " 'we review the record in the light most favorable to the court's determinations[,] . . . draw all reasonable inferences from the evidence to support the findings and orders[,] [citation] . . . . [and] "do not reweigh the evidence or exercise independent judgment . . . ." ' " (See *Fabian L.*, *supra*, 214 Cal.App.4th at p. 1028; accord, *Katelynn Y.*, *supra*, 209 Cal.App.4th at p. 881.) Second, father acknowledges "that he has not argued the juvenile

11

We conclude that father failed to establish the juvenile court abused its discretion.

Father contends that "providing father with additional services aimed at addressing the protective issues . . . is in [K.A.L.'s] best interests" because "[father] is likely to have continued contact with [her]" and he "has completed some portions of his case plan, and wishes to continue to participate." (Citing, inter alia, *Alanna A., supra*, 135 Cal.App.4th at p. 565 ["As a practical matter, . . . where a nonreunifying parent is likely to have some continued contact with his or her child, further services to that parent may be in the child's best interests," fn. omitted].)  With regard to father's progress on his case plan, father points out that he completed 10 of his 26 domestic violence courses and his parenting education requirement, and that he participated in nine individual counseling sessions.  Father also claims "[h]e was no longer participating in conjoint counseling with mother, due to her allegations of recent domestic violence, and the issuance of the TRO."  He also blames "repeated continuances of his criminal court matter" for his failure to obtain "a new referral for [an] anger management" program.

The mere fact that father may have monitored visits with K.A.L. does not establish the juvenile court erred in terminating

---

court erred in failing to find there was a substantial probability of return to his custody if reunification services were continued beyond the first six[-]month review period."  Thus, even under DCFS's proposed standard of review, we would reject father's claim of error.  (See *In re J.F.* (2019) 39 Cal.App.5th 70, 79 (*J.F.*) ["The juvenile court's orders are 'presumed to be correct, and it is appellant's burden to affirmatively show error.'  [Citations.]"].)

his reunification services.  The juvenile court was tasked with exercising its discretion to determine " 'whether the parent will utilize additional services' " that " 'would ultimately inure to the benefit of the minor[,]' " (see *Katelynn Y.*, 209 Cal.App.4th at p. 881), or whether the further services would instead be "fruitless" or "futile" (see *Alanna A.*, *supra*, 135 Cal.App.4th at p. 566; *Jesse W.*, *supra*, 157 Cal.App.4th at p. 66).  Although the juvenile court did not make an express finding of futility, the record supports such an implied finding, and that the finding would not have been "arbitrary, capricious or patently absurd." (*Katelynn Y.*, at p. 881.)

The juvenile court was entitled to credit mother's claim that on August 15, 2020, father threatened mother with a gun and struck her several times, causing her to sustain a broken nose, a jaw fracture, and multiple bruises all over her body.  (See *Katelynn Y.*, *supra*, 209 Cal.App.4th at p. 881.)  This evidence supports the inference that father's prior participation in domestic violence and anger management courses had been fruitless, and that allowing him to continue to attend such classes would not eliminate the risk that he would commit future acts of violence against mother.  (See *In re R.C.* (2012) 210 Cal.App.4th 930, 942 [" ' "[P]ast violent behavior in a relationship is 'the best predictor of future violence.' " ' "].)

Furthermore, father admits that he was unable to participate in conjoint counseling sessions with mother because of this claim of domestic violence and the resulting temporary restraining order.  The juvenile court reasonably could have concluded that it was father's own violent behavior that prevented, and would prevent, him from making progress on these counseling sessions before expiration of the operative

13

restraining order on October 23, 2022.[12]  Put differently, the restraining order resulting from father's misconduct would have prevented him from participating in conjoint counseling with mother during the extended reunification period, which was scheduled to end on April 23, 2021.[13]  Thus, continuing to offer conjoint counseling to father would have been a pointless endeavor.

Notwithstanding father's completion of his parenting program, the juvenile court reasonably could have found that father had not been diligent in other aspects of his case plan. Father did not enroll in individual counseling until nearly eight months after the court approved his case plan at the disposition hearing, thereby considerably shortening the time available for him to derive therapeutic benefit from those counseling sessions. Further, on September 24, 2020—approximately 44 weeks after the juvenile court ordered father to complete a 26-week domestic violence course—father had completed only 10 weekly sessions.[14]

---

[12]  The currently operative two-year restraining order was issued on October 23, 2020 and expires on October 23, 2022.  As noted in the Factual and Procedural Background, even before the juvenile court issued this two-year restraining order, a series of temporary restraining orders issued in August and September 2020 prevented father from participating in conjoint counseling sessions with mother.

[13]  As set forth in our Factual and Procedural Background, the juvenile court extended mother's reunification services to the next hearing that was scheduled for April 23, 2021.

[14]  In the May 5, 2020 status review report, DCFS indicated it needed to submit a "request[ ] for special payment for financial assistance for . . . father" before he could begin his domestic violence courses, and that the request was approved on

14

Although father informed DCFS on September 28, 2020 that he was unable to obtain a referral from the criminal court to reenroll in the anger management program because the criminal court had continued the next hearing in that matter several times, father would not have needed to reenroll in the program if the program had not dismissed him in January 2020 for nonattendance.

Additionally, although the June 11, 2020 interim review report indicated father had participated in at least some of mother's weekly videocalls with K.A.L., father visited K.A.L. via a videocall on only four occasions between July 2020 and September 2020, and his most recent call with her lasted only four minutes. Drawing all reasonable inferences in favor of the order terminating father's services, we conclude the juvenile court could reasonably have found that father had lost interest in taking the steps necessary to reunify safely with his daughter. (See *Katelynn Y.*, *supra*, 209 Cal.App.4th at p. 881.)

For the foregoing reasons, we find the juvenile court did not err in terminating father's reunification services.

---

an unspecified date. Even if that request had not been approved prior to father's April 27, 2020 intake appointment for the program, it would appear he could have completed more than 10 weekly classes had he been diligent, given that there were 21 weeks between April 27, 2020 and September 24, 2020.

## DISPOSITION

The juvenile court's October 23, 2020 order terminating father's family reunification services is affirmed.

NOT TO BE PUBLISHED.

BENDIX, Acting P. J.

We concur:

CHANEY, J.

FEDERMAN, J.*

---

\* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.