Filed 11/13/14  Julio L. v. Super. Ct. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| JULIO L. et al., | D066144 |
| Petitioners, | |
| v. | (San Diego County Super. Ct. No. NJ13478C-D) |
| THE SUPERIOR COURT OF SAN DIEGO COUNTY, | |
| Respondent; | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY et al., | |
| Real Parties in Interest. | |

PROCEEDINGS in mandate after referral to a Welfare and Institutions Code[1]

section 366.26 hearing.  Carol Isackson, Judge.  Petitions denied; stay vacated.

---

[1]     All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

Dependency Legal Group of San Diego and John P. McCurley for Petitioner Julio L.

Dependency Legal Group of San Diego and Amanda J. Gonzales for Petitioner Ana R.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Paula J. Roach, Deputy County Counsel, for Real Party in Interest San Diego County Health and Human Services Agency.

Julio L. and Ana R. seek review of a juvenile court order setting a hearing under section 366.26. Julio challenges the termination of his court-ordered family reunification services under section 388, subdivision (c). He also contends the court abused its discretion when it suspended his visitation with his son. We deny the petition.

FACTUAL AND PROCEDURAL BACKGROUND

Julio and Ana are the parents of A.L., now five years old. In September 2013, the San Diego County Health and Human Services Agency (Agency) filed petitions under section 300 alleging that A.L. and his two younger half siblings (siblings) were at substantial risk of suffering serious harm or illness as a result of Ana's chronic methamphetamine use. Ana had a pattern of leaving the children for extended periods of time with the maternal grandmother, who did not have the financial resources to support the children. The petition filed on behalf of A.L. further alleged Julio was unable to supervise and protect A.L.

Ana had a history of methamphetamine use. She acknowledged using methamphetamine during the first 20 weeks of her pregnancy with A.L. Ana identified

2

Julio as a trigger for her methamphetamine abuse and said she and Julio were using methamphetamine together the week preceding the children's detention in protective custody.

The social worker was unable to locate Julio for several weeks. Julio had been arrested on drug and theft charges, and was incarcerated in Imperial County. He appeared in juvenile court for the first time on October 19. Julio said A.L. had lived with him when he was not incarcerated.[2] The longest period was from January to June 2013.

Ana denied that A.L. ever lived with Julio. She said Julio saw A.L. approximately four to six times a year. The maternal grandmother took care of A.L. and his sister, D.R., for eight months in 2012. Ana did not return home until she gave birth to her youngest child in January 2013.

Julio told the social worker he wanted to care for A.L. if Ana were unable to reunify with him. On October 17, Julio's probation officer contacted the social worker and said Julio was in her office asking for help treating his addiction. With the probation officer's assistance, Julio entered a residential substance abuse treatment program. Julio contacted the social worker on October 31 to tell her he was in treatment and provide a telephone number.

On November 7, the court made a true finding on the section 300 petitions, removed A.L. and his siblings from parental custody, and ordered a plan of reunification services for Julio and Ana. Julio's case plan included a parenting education program and

---

[2]     Julio's criminal history is not included in the Agency's reports.

an inpatient substance abuse treatment program. His case plan goals included staying drug free, obeying the law, following all conditions of probation or parole, and meeting his child's physical, emotional, medical and educational needs.

The court advised Julio and Ana that A.L. was a member of a sibling group in which the other two siblings were under three years of age and it was authorized to terminate reunification services after six months if the parents did not participate regularly and make substantive progress in their case plans. The court set the six-month review hearing for April 30, 2014, and the 12-month review hearing for October 29, 2014.

Shortly after the jurisdictional and dispositional hearings, the Imperial County District Attorney refused to allow Julio to remain in his inpatient substance abuse treatment program, and Julio returned to Imperial County to resolve his criminal case. He was sentenced to two years in jail with an expected release date of November 2, 2014. When he was incarcerated, Julio attempted to contact the social worker but her telephone was malfunctioning and she could not accept his collect calls. In February 2014, Julio's public defender contacted the social worker on his behalf to find out the status of A.L.'s case and request visitation services.

A.L. and D.R. were placed together in foster care. The youngest sibling, a baby, was placed in another foster home, and later was placed with a maternal relative. The maternal grandmother wanted to care for all three children but needed to establish a better support system. The Agency planned to allow the youngest sibling to remain with his relative caregiver, and to transition A.L. and D.R. to their grandmother's care.

4

A.L. had significant speech delays and behavioral problems. At age four, his verbal abilities were similar to those of a two-year-old child. In foster care, A.L. continued to display very difficult behaviors, including physical aggression toward children and adults. He had two foster care placements and three temporary placements in five months. He often yelled and appeared to be anxious and angry. He was asked to leave a preschool because his behaviors were becoming increasingly unmanageable. In March 2014, A.L. was placed in a treatment-level foster care home without his sister. He adjusted well and the stability of the placement allowed him to consistently receive therapeutic services for the first time since he was detained in protective custody.

Ana relapsed on methamphetamine after completing an inpatient substance abuse treatment program. She stopped visiting the children and did not participate in services or contact the social worker. On April 30, the Agency filed a petition under section 388, subdivision (c) (the petition), asking the court to terminate the parents' reunification services because they had not completed their case plans and Julio would be incarcerated until November 2014. Julio asked the court to order the Agency to provide a prepaid telephone card to him. The Agency reported that Julio had been attempting to telephone the social worker for several months and was having problems because she could not accept collect calls on her desk phone.

At a hearing on May 20, the court found the petition stated a prima facie case and set a hearing on the petition to be held concurrently with the six-month review hearing on June 11. The court ordered the Agency to provide a $25 phone card for Julio.

5

At the June 11 hearing, the court admitted the Agency's reports in evidence. The social worker reported that A.L.'s therapist did not believe it was in A.L.'s best interests to visit Julio in jail in Imperial County. According to the therapist, visitation would be "very emotionally disruptive" for A.L because he lacked the ability to self-regulate and would not be able to tolerate the trip to Imperial County and the intake process at the jail. D.R. was transitioning from foster care to her grandmother's home. The Agency was continuing to assess A.L.'s ability to transition to his grandmother's care and anticipated that he eventually would be placed in her care.

The social worker also reported on her efforts to locate Julio and provide services to him, which we set forth in detail in Discussion, part C.1, *post*. She recommended the court terminate reunification services, set a section 366.26 hearing and suspend Julio's visitation with A.L. Julio testified by stipulation. He was allowed to participate in only one program at a time while incarcerated. He had turned himself in to his probation officer to resolve his outstanding criminal charges but the Imperial County prosecutor would not agree to allow him to stay in inpatient treatment. Instead, Julio completed a substance abuse education program while incarcerated, which would allow him to return to the inpatient treatment program when released from jail. At the close of the hearing, the court terminated Ana's reunification services to her two younger children, each under three years of age on the date they were removed from parental custody, and set a hearing under section 366.26 to select and implement their permanency plans.

On June 18, the court found that the Agency met its burden to show the parents' action or inaction created a substantial likelihood reunification would not occur, and they

6

were offered or provided reasonable reunification services.  The court granted the Agency's petition to terminate reunification services in A.L.'s case.  The court set A.L.'s section 366.26 hearing on the same date and time as his siblings' section 366.26 hearing.  We set out the court's ruling with respect to Julio in greater detail in Discussion, part C.2, *post*.

The court found that it would be detrimental to A.L. to visit Julio while he was incarcerated and suspended in-person visitation.  The court fashioned orders for written and telephonic contact between Julio and A.L., and directed the social worker to set a special hearing if the therapist changed her position about A.L.'s ability to travel to Imperial County.

Julio and Ana petitioned for review of the juvenile court's findings and orders. (§ 366.26, subd. (*l*); Cal. Rules of Court, rule 8.452.)  They ask this court to vacate the findings and orders terminating reunification services and remand the case with orders to provide an additional period of family reunification services.  This court issued an order to show cause, the Agency responded and the parties waived oral argument.  This court issued a stay of the section 366.26 hearing on September 11, 2014.

## DISCUSSION

Julio contends the court abused its discretion when it terminated his reunification services under section 388, subdivision (c)(1)(B).  He argues the record shows that in view of his circumstances, he was making appropriate progress with his case plan and his term of incarceration was not so long as to defeat his ability to reunify with his son.  Julio contends the court erred when it limited consideration of the probability of reunification

7

to the time period ending with the 12-month review hearing, and did not consider its authority to extend reunification services to the 18- and 24-month review hearing dates. Julio further contends the reasonable services finding is not supported by substantial evidence because he did not receive court-ordered visitation services while incarcerated. He also challenges the court's visitation order. Ana joins with Julio's arguments.[3]

The Agency argues the court correctly applied section 388, subdivision (c)(1)(B), by first considering whether Julio was likely to reunify with A.L. within the 12-month review period, and then by considering whether reunification was likely to be achieved within the 18-month review period. The Agency further contends reasonable visitation services were provided to Julio, and the court did not abuse its discretion when it temporarily suspended Julio's visitation with A.L. A.L. joins with the Agency's arguments.

A

*Statutory Framework*

Family reunification services play a critical role in dependency proceedings. (*In re Alanna A*. (2005) 135 Cal.App.4th 555, 563.) When a child is removed from the physical custody of his or her parent, the juvenile court is required to offer or provide family reunification services to the child's mother and presumed father, and has discretion

---

3     Ana filed a notice of intent to file a writ petition. She then filed a letter brief joining with Julio's arguments. Although we liberally construe the letter brief as a writ petition under California Rules of Court, rules 8.450 and 8.452, the better practice for a party who has filed a notice of intent and does not plan to submit a formal brief is to file form JV-825, Petition for Extraordinary Writ, in this court and include a statement on that form that the party is joining with another party's arguments.

to offer or provide reunification services to the child's biological father. (§ 361.5, subd. (a).) Services "may include provision of a full array of social and health services to help the child and family and to prevent reabuse of children." (§ 300.2.) Reunification services should be tailored to the particular needs of the family. (*David B. v. Superior Court* (2004) 123 Cal.App.4th 768, 793-794.)

Unless a reunification bypass provision applies under section 361.5, subdivisions (b)[4] or (e),[5] a parent of a child three years of age or older generally will have 12 months to mitigate the conditions that led to the initial removal and continued custody of the child. (§ 361.5, subd. (a)(1)(A).) Reunification services for a parent of a child under three years of age, or a member of a sibling group,[6] may be limited to six months if the parent has not participated regularly and made substantial progress in a court-ordered

---

[4] Under section 361.5, subdivision (b), reunification services need not (and in some cases must not) be provided to a parent who has: severely abused a child, either sexually or physically; caused the death of another child; willfully abandoned the child; has a history of extensive, chronic drug use and has resisted treatment or failed to comply with a drug or alcohol treatment program on at least two prior occasions; or failed to reunify with the child's sibling and has not subsequently made a reasonable effort to treat the problems that led to the sibling's removal.

[5] Under section 361.5, subdivision (e), the court need not provide reunification services to a parent who is incarcerated or institutionalized and the court finds that providing services to that parent would be detrimental to the child.

[6] A " 'sibling group' " means two or more children related to each other as full or half siblings and removed from parental custody at the same time, and in which one member of the sibling group was under three years of age at the time of removal. (§ 361.5, subd. (a)(1)(C).) Court-ordered services may be limited to six months to the members of the sibling group three years of age or older for the purpose of placing and maintaining a sibling group together in a permanent home should reunification efforts fail. (*Ibid.*)

case plan and there is not a substantial probability the child may be returned to his or her parent by the 12-month review hearing. (§§ 361.5, subd. (a)(1)(A), 366.21, subd. (e).)

Any motion to terminate court-ordered reunification services prior to the 12-month review hearing for a child three years of age or older, or prior to the six-month review hearing for a child under three years of age or a member of a sibling group, must be made pursuant to section 388, subdivision (c). (§§ 361.5, subd. (a)(2), 388, subd. (c)(1).) A motion to terminate court-ordered reunification services is not required at a six-month review hearing if the court finds by clear and convincing evidence that the whereabouts of the child's parents are still unknown, the parent has failed to contact and visit the child, or the parent has been convicted of a felony indicating parental unfitness. (§ 361.5, subd. (a)(2).)

Section 388, subdivision (c), authorizes any party, including a child who is a dependent of the juvenile court, to petition the court to terminate court-ordered reunification services prior to the applicable review hearing only if one of the following conditions exist: (1) it appears that a change of circumstances or new evidence exists that satisfies a condition set forth in the reunification bypass provisions under section 361.5, subdivisions (b) or (e); or (2) the action or inaction of the parent creates a substantial likelihood that reunification will not occur, including, but not limited to, the parent's failure to visit the child, or the failure of the parent to participate regularly and make substantive progress in a court-ordered treatment plan. (§ 388, subd. (c)(1)(A), (B).) In determining whether there is a substantial likelihood that reunification will not occur, the court is required to consider factors including the parent's incarceration,

10

institutionalization, federal immigration detention, deportation, or participation in a court-ordered residential substance abuse treatment program. (§ 388, subd. (c)(2); *In re J.P.* (2014) 229 Cal.App.4th 108, 122-123.)

To terminate reunification services on a section 388 petition or at a six- or 12-month review hearing, the court must find reasonable services that were designed to aid the parent in overcoming the problems that led to the initial removal and continued custody of the child have been provided or offered to the parent (reasonable services finding). (§§ 366.21, subds. (e), (f), 388, subd. (c)(3).) A higher standard of proof applies to terminate reunification services under section 388 than at a review hearing. (Cf. § 388, subd. (c)(3) [reasonable services finding must be made by clear and convincing evidence] to § 366.21, subds. (e), (f) [preponderance of the evidence].)

B

*Additional Factual and Procedural Background*

1.   *The Social Worker's Report*

In reporting on her efforts to locate and provide services to Julio, the social worker spoke to Julio's probation officer on October 17, 2013, who told her Julio would be entering an inpatient substance abuse treatment program (the program or treatment program). Julio contacted the social worker on October 31 to tell her he was in a treatment program and provide a contact telephone number. On November 7, at a court hearing, Julio said he would be turning himself in to his probation officer to resolve an outstanding criminal case in Imperial County. He gave the probation officer's contact information to the social worker. On November 8, the social worker submitted a request

11

to the Family Visitation Center (FVC) to provide visitation services at the treatment program for Julio and A.L. On November 18, the FVC contacted the social worker to tell her they found the visitation request. The social worker contacted the treatment program the next day only to be told Julio had left.

Julio asked his public defender to telephone the social worker on his behalf. After receiving a message from the public defender on December 3, the social worker contacted the public defender on December 12. The public defender said Julio was facing a possible two-year sentence.

Julio telephoned the social worker several times but her desk phone was malfunctioning and she could not accept collect calls. The social worker knew Julio was incarcerated. However, she was unable to locate him because his first and last names matched a number of other inmates and the search results did not provide a date of birth. On February 4, 2014, the social worker contacted Julio's probation officer, who informed her Julio was incarcerated at the Imperial County Jail. The social worker telephoned the jail and learned that Julio had a sentencing hearing on February 7.

On February 24, 2014, the social worker received a voice message from Julio's public defender, who was contacting her at Julio's request. Julio wanted to know the status of A.L.'s dependency case and was asking for visitation. He had a release date of November 2, 2014. Julio made several more attempts to telephone the social worker collect. The social worker contacted the facility on April 1 to determine what services, if any, were available to Julio. The facility offered GED classes and some inmates were eligible for anger management, work crew and drug treatment. Julio was attending

12

religious services and had started a drug education class. The Agency filed a section 388 petition to terminate reunification services to Julio on April 30.

The social worker telephoned the jail in May and June to learn about the visitation process and whether any new services were available. On May 20, the social worker sent a letter to Julio informing him of the six-month review hearing and the problems she was having with her desk phone. She provided an alternate telephone number and also sent paper and postage-paid envelopes to him. The social worker mailed a prison parenting packet to Julio on June 4. On June 5, the social worker received a letter from Julio thanking her for the paper and envelopes, acknowledging he had received the alternate telephone number and providing information about his participation in available services as well as the information required to set up his court-ordered telephone card. The consolidated hearings on the six-month review and the Agency's petition to terminate reunification services were held on June 11 and 18.

2.    *The Juvenile Court's Ruling*

In granting the Agency's petition to terminate reunification services to the parents under section 388, subdivision (c)(1)(B), the juvenile court found that the social worker immediately set up visitation services at the treatment program. However, Julio left the treatment program on his own volition and did not discuss the services that would be available to him in Imperial County with the social worker. The court noted there were several months of confusion about Julio's whereabouts, and wondered why it was so

13

unclear.[7]  Although Julio tried to telephone the social worker, he did not notify the Agency or the court of his whereabouts.  When the social worker learned Julio's location, she investigated the services available to him, authorized a telephone card and sent notices and a parenting packet to him.  Even if the Agency had learned of Julio's whereabouts two or three months earlier, it would not have been able to supplement the services available to him in custody.

The court found the Agency offered and provided reasonable services to Julio, who made a decision to leave those services and to subject himself to incarceration in El Centro.  That may have been the right decision for Julio with respect to his criminal charges, but it did not serve his interests in terms of reunification with his child.  The order for inpatient substance abuse treatment was not a marginal requirement but was one of two core components underlying Julio's ability to reunify with A.L.  The other core component was building and furthering a relationship with A.L. and learning how to manage his behavior.  The court recognized that Julio completed a program that would allow him to reenter an inpatient substance abuse program on his release from jail.  In evaluating whether there was a substantial likelihood of reunification, the court stated:

> "So under the most optimistic scenario [Julio] will be released at the
> 12-month date and then will have to go into what, at least, again,
> will be several months of an inpatient program in order to make
> progress with his case plan.

---

7      There are two county jails and two state prisons in Imperial County.  (See <www.icso.org/corrections> & <www.cdcr.ca.gov/Facilities_Locator/index.html>, as of Nov. 13, 2014.)

"Following that he will need, for the satisfaction of the Agency, the court, and certainly minor's counsel, to establish that he can remain clean and sober once out of the structure of an inpatient program. So we then catapult ourselves, if services were to be extended beyond the 12-month date, and we're into complete speculation that the father will not only complete the program, but then would go into aftercare.

"The court recognizes that incarceration clearly is a barrier to a parent receiving inpatient drug treatment, but this is not a barrier that the court or the Agency can work around in this case. There is no way to provide services, as I said, to permit the father to take advantage of this program. [¶] . . . [¶]

"Counsel for [father] speculated that we could go out to the 24-month point in providing services for [him]. This is not the law or reality. The court can only look to the 12-month review period, and based on the evidence before the court, the father's failure to participate in the case plan does not warrant extending the services to the 12-month date.

"As to the parenting part of the case plan, father was provided with a parenting workbook. This is not sufficient. The court has evidence before it as to [A.L.]'s needs. The father, at the 12-month point, when he is released, he's going to have to begin building a relationship with the child. This relationship does not exist."

The court found A.L. was a troubled child in his sixth temporary placement. By the time of Julio's release from jail, he would not have seen A.L. in two years. Even had the Agency arranged visits, the child would not have been able to travel to Imperial County. The court found Julio did not make A.L. a priority in his life and it was "abundantly clear" reunification would not occur in the foreseeable future. It was not in A.L.'s best interests to subject him to an extended period of uncertainty when he was just beginning to stabilize his emotions and behavior. The court terminated reunification services.

15

C

*Visitation*

1.    *In View of the Circumstances of the Case, There Is Substantial Evidence to Support the Finding the Agency Provided Reasonable Visitation Services to Julio*

Julio asserts the social worker did not make a good faith effort to provide visitation services to him and therefore the evidence is insufficient to support the reasonable services finding.  He argues the record shows visitation was court ordered as part of his case plan.  Further, although Julio was not required to do so because the burden to provide visitation services was on the Agency, he specifically requested visitation services after he was incarcerated.  Julio contends the record shows the social worker did not inquire about the jail's visitation policies until shortly before the six-month review hearing and did not facilitate telephone contact with his son.  Julio contends the therapist's belief that A.L. was not able to make the trip to Imperial County, which the social worker reported in June 2014, does not justify the lack of reasonable efforts to provide visitation prior to that date.  He contends he was prejudiced by the Agency's failure to provide visitation services because the court's ruling terminating his reunification services was based in part on his lack of contact with A.L.

Where a child is removed from a parent's custody in a dependency proceeding and reunification services are ordered, the court must order visitation between the child and the parent for whom services are ordered.  (§ 362.1, subd. (a)(1)(A); *Christopher D. v. Superior Court* (2012) 210 Cal.App.4th 60, 69.)  "Visitation shall be as frequent as possible, consistent with the well-being of the child."  (§ 362.1, subd. (a)(1)(A).)  As a

16

general rule, "visitation with the parent is a mandatory element of the reunification plan with the single exception that '[n]o visitation order shall jeopardize the safety of the child.' " (*In re C.C.* (2009) 172 Cal.App.4th 1481, 1491; § 362.1, subd. (a)(1)(B).)

However, when a parent is incarcerated, in-person contact is not necessarily mandatory. Services may include maintaining contact between the parent and child through collect telephone calls; transportation services, where appropriate; and visitation services, where appropriate. (§ 361.5, subd. (e)(1)(A)-(C).) In this context, the phrase "where appropriate" means where providing those services would not be detrimental to the child's physical health, safety, protection, or physical or emotional well-being. (*In re Jonathan M.* (1997) 53 Cal.App.4th 1234, 1237.)

The "adequacy of reunification plans and the reasonableness of the [Agency's] efforts are judged according to the circumstances of each case." (*Robin V. v. Superior Court* (1995) 33 Cal.App.4th 1158, 1164.) "The standard is not whether the services provided were the best that might be provided in an ideal world, but whether the services were reasonable under the circumstances." (*In re Misako R.* (1991) 2 Cal.App.4th 538, 547.)

" 'In reviewing the reasonableness of the services provided,' including visitation, 'this court must view the evidence in a light most favorable to the respondent. We must indulge in all legitimate and reasonable inferences to uphold the verdict. If there is substantial evidence supporting the judgment, our duty ends and the judgment must not be disturbed." (*Christopher D. v. Superior Court*, *supra*, 210 Cal.App.4th at p. 70, quoting *In re Misako R.*, *supra*, 2 Cal.App.4th at p. 545.) Julio has the burden to

17

demonstrate that there is no evidence of a sufficiently substantial character to support the juvenile court's order. (*In re L.Y.L.* (2002) 101 Cal.App.4th 942, 947.)

In view of the circumstances of the case, the record contains substantial evidence to support the reasonable services finding with respect to visitation. Although Julio focuses on the social worker's lack of attention to his circumstances, he overlooks the Agency's efforts to stabilize A.L.'s significant emotional and behavioral problems throughout the review period, and the Agency's continuous efforts to find an appropriate placement and provide therapeutic services to him. Before March 2014, A.L. had three temporary placements and two foster care placements. He was asked to leave preschool because of his aggressive and angry behaviors. At the time of the six-month review hearing, A.L. was only beginning to stabilize.

We draw the reasonable inference that stabilizing A.L.'s behavior and circumstances was necessary to provide appropriate transportation and visitation services under section 361.5, subdivision (e)(1)(B) and (C). It would not have been conducive to reunification had A.L. visited Julio only to decompensate or display aggressive behaviors. There is nothing in the record to indicate Julio tried to maintain contact with his son through alternate means such as telephone calls, letters, cards or gifts. Further, to the extent the court was required to facilitate alternate means of contact between Julio and A.L. prior to its order suspending in-person visitation, the record shows Julio did not notify the court of the difficulties he was having contacting the social worker until the six-month review date. Based on the record and the arguments raised in this

18

proceeding,[8] we conclude that there is substantial evidence to support the court's reasonable services finding.

2. *The Court Did Not Abuse Its Discretion When It Temporarily Suspended Visitation*

Julio contends the court erred when it found that visitation would be detrimental to A.L. and terminated his visitation. He argues the therapist's opinion is purely conclusory because it does not contain "a reasoned explanation connecting the factual predicates to the ultimate conclusion," and therefore lacks evidentiary value. (*Jennings v. Palomar Pomerado Health Systems, Inc.* (2003) 114 Cal.App.4th 1108, 1117.) Julio argues the facts at best show it may have been difficult for the caregiver or social worker to transport A.L. for visitation, but they do not support a finding that visiting Julio would be detrimental to A.L.

The premise of Julio's argument is factually and legally incorrect. The record does not support Julio's assertion the court terminated his visitation with A.L. It shows instead the court fashioned a visitation order suspending in-person visitation while Julio was incarcerated in Imperial County. The court made its detriment finding without prejudice and directed the social worker to notify the court once A.L. had made sufficient progress in therapy. The court's order provided for written and telephonic contact between Julio and A.L., and directed the social worker to set a special hearing as soon as it appeared

---

8　Our narrow decision that in view of the circumstances of this case there is substantial evidence to support the reasonable services finding as to visitation should not be misinterpreted as a stamp of approval of the Agency's general performance with respect to meeting its obligations under the case plan and providing reasonable services to Julio.

19

A.L. would be able to travel to El Centro in Imperial County from north San Diego County to visit his father.[9]

The court's order was consistent with its authority to fashion a visitation order under section 361.5, subdivision (e)(1)(B) and (C), for an incarcerated parent. There is substantial evidence to show the transportation services required for visitation were not appropriate for A.L. at that time. As discussed in the previous section, the evidence admitted at the July 11 hearing showed A.L. had great difficulty controlling his behavior, which affected his emotional and physical well-being. Further, we are not persuaded the social worker's recommendation and the therapist's opinion are purely conclusory. The therapist's opinion that the length of the trip would be detrimental to A.L. was based on her knowledge of the child after working with him for several months. A.L. was beginning to stabilize his behaviors. The court could reasonably determine it was in A.L.'s best interests not to change his routine at that time. We conclude the juvenile court appropriately met its responsibility to ensure contact between Julio and A.L. consistent with A.L.'s well-being. (§§ 362.1, subd. (a)(1), 361.5, subd. (e)(1)(B), (C).)

---

[9] On our own motion, we take judicial notice that the distance between the Vista Courthouse, the courthouse closest to the family's location, and the Imperial County Jail in El Centro, where Julio was incarcerated, is approximately 145 miles, and would require a two- to three-hour drive each way, depending on the route and traffic. (Evid. Code, § 452, subd. (g).)

D

*Section 388, Subdivision (c)*

1.  *The Court Erred When It Terminated Reunification Services Under Section 388, Subdivision (c)(1)(B)*

To grant a petition to terminate reunification services under section 388, subdivision (c)(1)(B), the court is required to find, by clear and convincing evidence, *the parent's action or inaction* creates a substantial likelihood that reunification will not occur. (*Ibid.*) In making this determination, the court is required to consider the parent's failure to visit the child, or the failure of the parent to participate regularly and make substantive progress in a court-ordered treatment plan in the context of factors such as the parent's incarceration, institutionalization, federal immigration detention, deportation, or participation in a court-ordered residential substance abuse treatment program. (*Id.*, subd. (c)(2).)

There is not substantial evidence in the record to support the court's finding that Julio's action or inaction created a substantial likelihood reunification would not occur. (§ 388, subd. (c)(1)(B).) We reject the court's finding that Julio's decision to resolve his outstanding criminal charges did not serve his interests in reunification with his child. Julio's case plan required him to comply with the law. Being a fugitive from justice does not serve any parent's interest in reunification. Serious, unresolved criminal charges present a practical barrier to reunification, and Julio correctly decided it was in his interest, and in his son's best interests, to resolve the charges against him. It would not have furthered reunification had Julio completed an inpatient substance abuse program

21

and strengthened his relationship with A.L. only to be incarcerated on outstanding criminal charges.

In addition, the juvenile court did not accurately review the requirements of Julio's case plan. The record shows Julio's case plan required him to complete an inpatient substance abuse treatment program (program). However, it also provided that were he discharged from the program, Julio was required to follow the recommendations of the program and/or submit to an intake appointment with the substance abuse specialist, comply with drug testing, as required, and participate in a 12-step program.

When Julio turned himself in to Imperial County authorities, he followed the directions of his treatment program and participated in a 21-class substance abuse education program. This enabled him to reenter the treatment program on his release. There is no evidence in the record to show he was required to drug test by the treatment program or Agency. The record shows visitation services were not in place while Julio was in the treatment program, and there were barriers to Julio's visitation with A.L. while he was incarcerated in Imperial County. On numerous occasions, Julio attempted to stay in contact with the social worker, and had others contact her on his behalf. Julio was not responsible for the social worker's malfunctioning telephone line, the misplaced referral for visitation services, the delay in providing a telephone card to him, the six-month delay in sending a parenting packet to him and, as the juvenile court noted, the confusion about Julio's whereabouts, which could have been, and eventually was, resolved by a telephone call to his probation officer. Therefore, we conclude the court erred when it determined

there was a substantial probability reunification would not occur as a result of Julio's action or inaction. (§ 388, subd. (c)(2).)

Because the record does not support the finding that it was *the parent's action or inaction* that created a substantial likelihood reunification would not occur, we need not consider the argument that the court misinterpreted section 388, subdivision (c)(1)(B), when it limited its consideration of the likelihood of reunification within the 12-month review period. Nevertheless, as we explain, the error was harmless.

2. *The Court Could Properly Have Terminated Reunification Services at the Six-Month Review Hearing Because A.L. Was a Member of a Sibling Group*

We are puzzled why the Agency filed a section 388 petition to terminate reunification services on the date set for the six-month review hearing. The Legislature designed section 388 to be used before the statutory reunification period has elapsed, which in this case was six months.[10] Thus, Julio's court-ordered services may have been limited to six months without the heightened showing required under section 388, subdivision (c). (§ 361.5, subd. (a)(1)(C).)

To terminate reunification services at a six-month review hearing, the court must find by clear and convincing evidence that the parent failed to participate regularly and failed to make substantive progress in a court-ordered treatment plan. However, if the court finds there is a substantial probability that the child, under three years of age on the

---

[10] A.L. was a member of a sibling group, whose members were removed from parental custody at the same time, and of which two members were less than three years of age at the time of removal. (§ 361.5, subd. (a)(1)(C).) The record shows the Agency planned to place A.L. in a permanent home with at least one of his younger siblings.

23

date of initial removal or a member of a sibling group, may be returned to his parent within six months or reasonable services have not been provided, the court shall continue the case to the 12-month permanency hearing. (§ 366.21, subd. (e).)

A parent's substantial compliance with his or her case plan should not be confused with the requirement a parent make substantial progress towards reunification with a child within the statutorily prescribed time period of six months for a child under the age of three years or a member of a sibling group. "The one finding does not automatically compel the other." (*Fabian L. v. Superior Court* (2013) 214 Cal.App.4th 1018, 1029.)

The record clearly supports termination of reunification services at the six-month review hearing. (See *In re Marquis D*. (1995) 38 Cal.App.4th 1813, 1825 [reviewing court should be reluctant to imply a detriment finding where the trial court has failed to make express findings or where the evidence is not clear].) Unlike section 388, subdivision (c)(1)(B), termination of reunification services at a six-month review hearing for a child who is under the age of three years or a member of a sibling group does not require a showing there is a substantial likelihood that reunification will not occur because of the parent's action or inaction. (§ 366.21, subd. (e).)

We conclude the record supports a finding that there is not sufficient evidence to warrant extending services to the 12-month date (§ 366.21, subd. (e)), and any error in proceeding under section 388, subdivision (c)(1)(B), was harmless. (*People v. Watson* (1956) 46 Cal.2d 818, 836-837 [error is harmless when it is not reasonably probable a result more favorable to the defendant would have been reached in the absence of the

statutory error].)[11]  The evidence adduced at the hearing shows that although Julio substantially complied with his case plan to the extent he was able, he did not make substantial progress in reestablishing his relationship with A.L., learning how to meet his son's needs and demonstrating he could overcome his substance abuse addiction. Further, the record shows the court will not be able to return A.L. to Julio's care within six months from the six-month review date.  (§ 366.21, subd. (e).)

3.      *The Court Could Properly Have Terminated Reunification Services Under Sections 388, Subdivision (c)(1)(A) and 361.5, Subdivision (e)*

When a parent becomes incarcerated after the dispositional hearing and the Agency believes early termination of court-ordered reunification services is appropriate under the circumstances, the better practice is to file a petition under section 388, subdivision (c)(1)(A), before the expiration of the applicable review period.  Here, had the Agency not intended to place A.L. in a permanent home with a younger sibling, it would have been appropriate to file a petition alleging there was a change of circumstances under section 361.5, subdivision (e), because Julio was incarcerated and providing reunification services would be detrimental to A.L.

---

[11]     The record shows Julio received notice and an opportunity to be heard.  At the disposition hearing, the court informed Julio that A.L. was a member of a sibling group and reunification services may be limited to six months if Julio did not make substantive progress with his case plan.  Julio had an opportunity to appear at the six-month review hearing, present his case and challenge the social worker's report.  The evidence presented at the six-month review hearing would have been the same had the Agency not filed a petition under section 388, subdivision (c)(1)(A).  (See *Chapman v. California* (1967) 386 U.S. 18, 24 [before an error of federal constitutional dimension can be held harmless the reviewing court must be able to declare a belief the error was harmless beyond a reasonable doubt].)

Section 388, subdivision (c)(1)(A), allows the court to terminate reunification services before the expiration of the statutory reunification period when it finds, by clear and convincing evidence, that providing reunification services to an incarcerated parent is detrimental to the child. (§ 361.5, subd. (e)(1).) "In determining detriment, the court shall consider the age of the child, the degree of parent-child bonding, the length of the sentence, the length and nature of the treatment, the nature of the crime or illness, the degree of detriment to the child if services are not offered, . . . the likelihood of the parent's discharge from incarceration, institutionalization, or detention within the reunification time limitations described in [section 361.5,] subdivision (a), and any other appropriate factors." (*Ibid.*)

The court made express findings on the record. Those findings are more appropriate to a determination under section 388, subdivision (c)(1)(A), which allows the court to consider a number of factors concerning the circumstances of the incarcerated parent and his or her child, than they were to the court's application of those factors to section 388, subdivision (c)(1)(B), which focuses on whether the parent's *action or inaction* has created a substantial likelihood that reunification will not occur. Relying on the court's explicit findings, we conclude the record supports termination of reunification services under section 388, subdivision (c)(1)(A), and any error under section 388, subdivision (c)(1)(B), was harmless.

The court found A.L. did not have a relationship with Julio. The record shows Julio had a history of repeated incarceration and his contact with A.L. had been limited. For example, A.L. was in the care of his maternal grandmother for eight months in 2012.

26

There is no indication in the record to show Julio visited A.L. during this period. The court found that when Julio was released from jail around the time of the 12-month review date, he would only then be able to make significant progress were he to fully participate in his case plan. Julio would have to complete an inpatient substance abuse program and demonstrate his ability to stay drug free and follow the law. He needed to build a relationship with A.L. The court also found A.L. was a troubled child in his sixth temporary placement. The record shows A.L. was a five-year-old child who never had had a permanent, stable home. He was troubled. The degree of parent-child bonding was minimal at best. The record also shows A.L. had siblings who were under the age of three years when detained in protective custody. He was bonded with his sister. Their cases were at the permanency stage.

We conclude the court's express findings support a determination that continuing the case to provide reunification services to Julio would be detrimental to A.L. (§ 361.5, subd. (e)(1).) Because of Julio's incarceration and need to resolve his substance abuse problem, there was not a substantial probability A.L. would be returned to Julio's care by the six- or 12-month review date. Although the statutory scheme under sections 388, subdivision (c)(1)(A), and 361.5, subdivision (e)(1), permits the court to consider whether there is a substantial probability of return within an 18-month period,[12] we agree

_____

12    Section 361.5, subdivision (e)(1) states that reunification services are subject to the applicable time limitations described in section 361.5, subdivision (a). Section 361.5, subdivision (a)(3), states that notwithstanding section 361.5, subdivision (a)(1), which limits reunification services to six or 12 months depending on the child's age or

27

with the juvenile court's assessment that in this case it would be purely speculative to consider the probability of return within that time frame. (*Fabian L. v. Superior Court, supra,* 214 Cal.App.4th at pp. 1031-1032 [18 months is the outside time limit for all children in the system absent extraordinary circumstances not present in this case].) Here, Julio had a serious substance abuse problem and a history of committing crimes and becoming incarcerated. He was not scheduled to be released until November 2014, after which he would just be starting the core provisions of his case plan. At that point, A.L. would have been waiting in the dependency system for more than a year without a permanent placement.

We conclude the court's findings support a determination under section 366.21, subdivision (e), and sections 388, subdivision (c)(1)(A), and 361.5, subdivision (e), and therefore any error was harmless.

## DISPOSITION

The petitions are denied. The stay issued September 11, 2014, is vacated.

MCDONALD, J.

WE CONCUR:

HUFFMAN, Acting P. J.

AARON, J.

---

membership in a sibling group, "court-ordered services may be extended up to a maximum time period not to exceed 18 months . . . ."

28