Filed 7/11/24  In re Angelica B. CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re ANGELICA B., a Person Coming Under the Juvenile Court Law. | |
| JOSEPH B.,<br><br>    Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF CONTRA COSTA COUNTY,<br><br>    Respondent;<br><br>CONTRA COSTA CHILDREN AND FAMILY SERVICES BUREAU,<br><br>    Real Party in Interest. | A170221<br><br>(Contra Costa County Super. Ct. No. J23-00321) |

Petitioner Joseph B. (father) petitions this court for an extraordinary writ pursuant to Welfare and Institutions Code section 366.26 and California Rules of Court, rule 8.452, seeking review of the juvenile court's order terminating his reunification services and setting a permanency planning hearing for his dependent child Angelica B. (minor), born in May 2023 (writ petition).[1]  Father seeks this writ relief on the grounds that there is

---

[1] Unless otherwise stated, all statutory citations herein are to the Welfare and Institutions Code.

1

insufficient evidence in the record to support the juvenile court's termination of his services and that the court abused its discretion by reducing his visitation with minor. We deny the writ petition.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 11, 2023, real party in interest Contra Costa County Children and Family Services Bureau (bureau) filed a petition pursuant to section 300, subdivision (b) alleging, among other things, that minor faced a substantial risk of serious physical harm or illness because minor's mother had a long history of drug abuse that interfered with her ability to care for a newborn and that father committed domestic violence against mother in March 2023 (hereinafter, section 300 petition).[2]

On May 12, 2023, the juvenile court detained minor after finding a prima facie case was established with respect to the allegations in the section 300 petition.

A jurisdictional/dispositional hearing was held on July 10, 2023. The court found that father, who was in custody and made no appearance, was the presumed father. In addition, the court sustained the amended allegations in the petition as to mother. The court then continued the matter in light of father's absence, finding exceptional circumstances to go beyond the 60 days for disposition.

On August 21, 2023, after several continuances were ordered to ensure father, who was incarcerated, could participate in the hearing, the court found true the allegation that father placed the child at substantial risk of harm by engaging in intimate partner violence with minor's mother. The court ordered reunification services for father as well as weekly supervised

---

[2] We discuss minor's mother, the nonappealing parent, only when relevant to the issues raised on appeal.

2

visitation upon his release from custody. Father's case plan required him to participate in services designed to address issues of anger management; illegal drug use and criminal behavior; domestic violence; parenting education; and substance abuse assessment, treatment and testing.

A six-month review hearing was initially set for February 5, 2024, but was continued to March 11, 2024. Nonetheless, on February 15, 2024, the court granted the bureau's ex parte request for an order permitting father to participate in virtual visitation once per month with minor from jail through the One Family program.

At the March 11, 2024 six-month review hearing, the court again ordered virtual visitation for father and minor, every other week for 15 minutes. At parents' requests, the court also set a contested hearing for April 15, 2024.

In advance of this hearing, the social worker prepared a report recommending termination of father's reunification services. Minor was placed with a foster family, where she was happy, healthy and thriving. Father, however, had made minimal progress with his case plan.

The contested hearing went forward on April 15, 2024. Afterward, the juvenile court sustained the allegations in the petition and adopted the department's recommendation to terminate reunification services as to mother and father. The court also set a permanency planning hearing pursuant to section 366.26 for August 5, 2024, finding clear and convincing evidence that the bureau offered reasonable services to parents designed to aid them in overcoming the problems that led to minor's removal. The court also found clear and convincing evidence that parents failed to participate regularly and make substantive progress in their case plans and that there

was no substantial probability minor would be returned to their physical custody even if services were extended.

Father filed a timely notice of intent to file a writ petition challenging the juvenile court's April 15, 2024 order.

## DISCUSSION

Father challenges the April 15, 2024 order on the grounds that the evidence was insufficient to support the factual findings underlying the juvenile court's decision to terminate his reunification services and set the matter for a section 366.26 hearing. Father also asserts the court abused its discretion by reducing his visitation with minor after terminating his services. We begin with the governing law.

## I. *Legal Framework.*

When a child is removed from parental custody, the juvenile court must order reunification services to assist the parents in reuniting with the child. (§ 361.5, subd. (a).) However, when, as here, the child is under the age of three at the time of his or her initial removal from the physical custody of the parent, "court-ordered services shall be provided for a period of 6 months from the dispositional hearing as provided in subdivision (e) of Section 366.21, but no longer than 12 months from the date the child entered foster care, as provided in Section 361.49, unless the child is returned to the home of the parent or guardian." (§ 361.5, subd. (a)(1)(B).)

" 'The status of every dependent child in foster care shall be reviewed periodically as determined by the court but no less frequently than once every six months . . . .' (§ 366, subd. (a)(1).) . . . [¶] . . . The third paragraph of section 366.21, subdivision (e), requires a specialized inquiry at the six-month review for children like [minor], who are 'under the age of three years on the date of the initial removal' and are not being returned to the custody of their

4

parents at that time. For such dependent children, if 'the court finds by clear and convincing evidence that the parent failed to participate regularly and make substantive progress in a court-ordered treatment plan, the *court may schedule a hearing pursuant to Section 366.26* within 120 days. If, however, the court finds there is a *substantial probability that the child . . . may be returned* to his or her parent or legal guardian within six months or that reasonable services have not been provided, the court shall continue the case to the 12-month permanency hearing.' (§ 366.21, subd. (e), italics added.)" (*M.V. v. Superior Court* (2008) 167 Cal.App.4th 166, 175.)

"Reunification services for incarcerated parents are specifically governed by section 361.5, subdivision (e)(1), which provides, 'the court shall order reasonable services unless the court determines, by clear and convincing evidence, those services would be detrimental to the child.' In determining the existence of detriment, the court is to consider several factors, 'the likelihood of the parent's discharge from incarceration . . . within the reunification time limitations described in subdivision (a), and any other appropriate factors.' (*Ibid.*) In ordering services for incarcerated parents, the court must consider what is available to that parent: 'In determining the content of reasonable services, the court shall consider the particular barriers to an incarcerated, institutionalized . . . parent's access to those court-mandated services and ability to maintain contact with his or her child, and shall document this information in the child's case plan.' (*Ibid.*) Thus, a parent may be required as part of his or her service plan to attend counseling, parenting classes, or vocational training programs if access to those services is provided." (*Fabian L. v. Superior Court* (2013) 214 Cal.App.4th 1018, 1028 (*Fabian L.*).) A court's finding that the parent has

5

been provided reasonable services must be made upon clear and convincing evidence. (*In re Alvin R.* (2003) 108 Cal.App.4th 962, 971.)

"We review an order terminating reunification services to determine if it is supported by substantial evidence. [Citation.] In making this determination, we review the record in the light most favorable to the court's determinations and draw all reasonable inferences from the evidence to support the findings and orders. [Citation.] 'We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court.' [Citation.]" (*Kevin R. v. Superior Court* (2010) 191 Cal.App.4th 676, 688–689 (*Kevin R.*).) Ultimately, our task is to decide whether any reasonable trier of fact, considering the entire record, could properly have made the challenged decision. (*Kuhn v. Department of General Services* (1994) 22 Cal.App.4th 1627, 1633; *In re Mark L.* (2001) 94 Cal.App.4th 573, 580–581 [" 'on appeal . . . the usual rule of conflicting evidence is applied, giving full effect to the respondent's evidence, however slight, and disregarding the appellant's evidence, however strong' "], disapproved on another ground in *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010, fn. 7.)

## II.    *Analysis.*

The *Fabian L.* court explained, in distilling this legal framework, that "[section 366.21, subdivision (e)] gives the juvenile court discretion to schedule a [section 366.26] hearing, unless there is a substantial probability the child will be returned to his or her parent in six months or if there was evidence of unreasonable services. (§ 366.21, subd. (e).) Neither delaying event occurred in th[at] case." (*Fabian L., supra*, 214 Cal.App.4th at p. 1031.) The same is true here.

First, there was no substantial probability minor would be returned to father in six months. Father, who did not yet have a release date from custody, insists he was not able to access most of the services identified in the case plan. We acknowledge a parent's incarceration may create significant obstacles to accessing reunification services. However, while a parent's incarceration is not a legitimate reason to deny services, neither is it necessarily a reason to extend the statutory time period for reunification, particularly when, as here, the child is under three years old. (See *In re Christopher L.* (2022) 12 Cal.5th 1063, 1079.) Here, substantial evidence supports the juvenile court's findings that father did not make significant progress in resolving the problems that led to minor's removal from the home and did not demonstrate the capacity to complete the objectives of his case plan, notwithstanding his incarceration. Among other things, father's compliance with the case plan was minimal. Father participated in several virtual visits with minor, and the social worker testified that there were no issues. The social worker also testified that father reported participating in various programs while incarcerated in El Dorado County.[3] However, father never followed through on the social worker's requests for documentation confirming his participation. Further, while father belatedly offered, through the maternal grandmother, three documents indicating his participation in an e-learning domestic violence course, an e-learning employment course, and the One Family program while incarcerated, the court reasonably questioned these documents' significance.[4] For instance, the documents were not provided to father's attorney or the bureau prior to the hearing. Moreover, as

---

[3] Father was later returned to custody in San Francisco.

[4] The maternal grandmother brought them to the hearing and told the court that father mailed them to her.

7

the social worker testified and the court noted, nothing in the documents enabled the social worker to determine the duration of these programs or whether they offered a curriculum that "might have assisted [father] in meeting some of the [case plan] goals."

More problematic, despite the sustained allegation of father's intimate partner violence against mother, the social worker testified that he "denied that there was domestic violence and said he didn't even know why he had a Case Plan." According to the bureau's report, father also used abusive language toward the social worker when he learned minor was being recommended for adoption. "These factors support the court's decision to terminate reunification services. (*In re Mary B.* (2013) 218 Cal.App.4th 1474, 1483–1484 [citation] [minimal progress toward addressing anger issues]; *Fabian L. v. Superior Court* (2013) 214 Cal.App.4th 1018, 1029–1030 [citation] [failure to address domestic violence issues]; *In re Alanna A.* (2005) 135 Cal.App.4th 555, 566 [citation] [marginal participation in reunification services]; *Angela S. v. Superior Court* (1995) 36 Cal.App.4th 758, 763–764 [citation] [failure to attend therapy, lack of insight, and denial of problems].)" (*J.H. v. Superior Court* (2018) 20 Cal.App.5th 530, 535–536.)

Thus, viewing the record in the light most favorable to the court's findings and drawing all reasonable inferences from the evidence to support its findings and orders (*Kevin R., supra*, 191 Cal.App.4th at pp. 688–689), we conclude the court reasonably determined that father made no more than minimal progress in accessing services that would alleviate the problems that led to minor's removal, including his drug abuse, criminal behavior and domestic violence issues. The April 15, 2024 contested review hearing was held nearly eight months after the initial disposition in this case (on August 21, 2023), several months past the statutorily prescribed six-month

reunification period for a child, such as minor, under age three. The court could therefore also reasonably find that father would not be in a position to safely care for minor in the foreseeable future while remaining free of drugs, abstaining from domestic violence and other criminal activity, and maintaining employment.

Second, the services the bureau provided father were not unreasonable. The bureau referred father to a variety of services designed to aid him in overcoming the problems that led to minor's removal, including domestic violence counseling; individual counseling; parenting classes; and substance abuse services, treatment and testing. The bureau also arranged for father to participate in virtual visits with minor every month through the One Family program. Father informed the social worker that he participated in some of these services; however, as mentioned, he then failed to comply with her request to provide the necessary documentation to confirm his participation. At some point, father also told the social worker that he was no longer able to access services because he had been removed from the jail's general population after giving up his gang affiliation. The social worker responded by contacting the "person in charge of the [jail] programs"; however, she could not "get a clear response" regarding which programs defendant could access.

The juvenile court found the social worker's efforts in this regard were "diligent." The court also rejected father's claim that he was precluded from accessing services after denouncing his gang affiliation, stating: "His position is since he wasn't in what would be referred to as some type of gang population—since he was no longer a part of the gang, that he wasn't able to take classes. [¶] That doesn't make sense to me. · It's nonsensical. What in the world does that mean? · It would appear to be the opposite. · That if you weren't involved in gang activity that you would be rewarded or encouraged

9

to be in the general population to take classes. · That's not even credible." In the absence of contrary evidence, we decline to second-guess the juvenile court's credibility finding, given that the juvenile court, unlike this court, presided over the contested hearing and observed firsthand the testimony and arguments. (*In re Casey D.* (1999) 70 Cal.App.4th 38, 52–53, disapproved on another ground in *In re Caden C.* (2021) 11 Cal.5th 614, 636, fn. 5.)

Thus, reviewing the record as a whole and in a light most favorable to upholding the April 15, 2024 order (*Kevin R., supra*, 191 Cal.App.4th at pp. 688–689), we conclude father's case plan reasonably complied with the statutory scheme for incarcerated parents. The bureau appropriately took into consideration "the particular barriers [and father's limited] access to those court-mandated services and ability to maintain contact with the child . . . ." (§ 361.5, subd. (e)(1).) Father's case plan, while not perfect, was appropriate given his incarceration, which extended throughout these proceedings and had no end in sight. Father, not the bureau, created this circumstance by engaging in criminal activity for most of his adult life.[5] Meanwhile, minor is by all accounts thriving in her new placement.

The juvenile court's finding that reasonable services were provided was thus supported by substantial evidence and within the scope of its discretion under section 366.21, subdivision (e).

## III.   *The Court's Visitation Order Stands.*

Lastly, we reject father's claim that the juvenile court abused its discretion by reducing his visitation with minor to 15 minutes per month while father remained in custody, to be increased to one hour per month upon his release.

---

[5] Father was being held on $300,000 bond with no scheduled release date. Father has at least 18 convictions dating from 2009 to 2022.

"Once the juvenile court has denied reunification services . . . , section 361.5, subdivision (f) gives the court discretion to allow the parent to continue visitation with his or her child unless it finds that visitation would be detrimental to the child." (*In re J.N.* (2006) 138 Cal.App.4th 450, 457, 458–459 [noting "visitation is not integral to the overall plan when the parent is not participating in reunification efforts"], italics omitted.) "In balancing the interests of the parent and child, 'the court in the exercise of its judicial discretion should determine whether there should be any right to visitation and, if so, the frequency and length of visitation. The court may, of course, impose any other conditions or requirements to further define the right to visitation in light of the particular circumstances of the case before it.' " (*In re Shawna M.* (1993) 19 Cal.App.4th 1686, 1690.) On appeal, "[a] juvenile court's determination as to whether parental visits are in the best interests of a dependent child may be reversed only upon a clear showing of abuse of discretion," meaning a showing that the court " ' " 'exceeded the bounds of reasons.' " ' " (*In re Emmanuel R.* (2001) 94 Cal.App.4th 452, 465 (*Emmanuel R.*).)

Father asserts, without any evidence, that the court's order to reduce his visitation was detrimental to minor since minor was "building a bond" with father. This showing does not meet father's burden of demonstrating the court exceeded the bounds of reason in making its order. (*Emmanuel R., supra*, 94 Cal.App.4th at p. 465.) This is particularly true in light of the fact that a permanency planning hearing has been set and parental reunification is no longer the goal. As the California Supreme Court explains, the state's interest in providing stable, permanent homes for children who have been removed from parental custody requires the court to concentrate its efforts, once reunification services have been terminated, on the child's placement

11

and well-being, rather than on a parent's parental interests. (*In re Marilyn H.* (1993) 5 Cal.4th 295, 306–307.) Accordingly, father's writ petition is denied.

## DISPOSITION

The petition for extraordinary writ relief is denied on the merits. (§ 366.26, subd. (*l*)(1)(C); Cal. Rules of Court, rule 8.452(h)(1); see *Kowis v. Howard* (1992) 3 Cal.4th 888, 893–895.) Our decision is immediately final as to this court. (Cal. Rules of Court, rules 8.452(i), 8.490(b)(1)(A).)


Jackson, P. J.

WE CONCUR:

Burns, J.
Chou, J.


A170221/*Joseph B. v. Superior Court*

12